**Leslie Ann JOHNSON, Plaintiff–Appellant,**

v.

**STATE of Oregon; OREGON DEPARTMENT OF HUMAN RESOURCES, REHABILITATION DIVISION, Defendants–Appellees.**

No. 96–36191.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1998.

Decided April 20, 1998.

---

Michael Duane Brown, Churchill, Leonard, Brown, Lodine & Hendrie, Salem, OR, for Plaintiff–Appellant.

Stephanie L. Striffler, Assistant Attorney General, Office of Attorney General, Salem, OR, for Defendants–Appellees.

Before: ALDISERT,* PREGERSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

This case requires us to determine (1) the conditions under which the doctrine of judicial estoppel precludes claims under the Americans with Disabilities Act of 1990(ADA),[1] when a litigant has sought or received benefits for a disability; and (2) whether on the facts of this case, the district court's use of judicial estoppel to bar Leslie Johnson's ADA claim was an abuse of discretion. The district court had jurisdiction over Ms. Johnson's ADA claim pursuant to 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

We hold that the pursuit or receipt per se of disability benefits does not bar ADA claims. In addition, we conclude that on the facts of this case, invocation of judicial estoppel to bar Ms. Johnson's ADA claim was inappropriate. We reverse and remand.

## Background

Ms. Johnson sued her employer, the State of Oregon Vocational Rehabilitation Division

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge for the Third Circuit, sitting by designation.

1.  42 U.S.C. §§ 12101 *et seq.*

(VRD), claiming they had discriminated against her in violation of the ADA. Among other things, she sought reinstatement to her job with accommodation for her disability. Prior to trial, the VRD filed a motion for summary judgment based on judicial estoppel. The motion failed because it was not accompanied by any supporting documentation. During the trial, however, the magistrate judge allowed the VRD to renew it. He granted the renewed motion, holding that the combined representations in Ms. Johnson's application for disability benefits regarding her incapacity to work judicially estopped her from claiming she was a "qualified person with a disability" who could perform the essential functions of her position with reasonable accommodations pursuant to the ADA, 42 U.S.C. §§ 12111(8) and 12112(a). Ms. Johnson appealed.

## Standard of Review

We review the district court's grant of summary judgment de novo. *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir. 1997). Federal law governs the application of judicial estoppel in federal courts. *Rissetto v. Plumbers and Steamfitters Local,* 94 F.3d 597, 603 (9th Cir.1996). Whether a per se rule exists barring ADA claims after a claimant has applied for and received benefits is a question of law reviewed de novo. *See Torres–Lopez v. May,* 111 F.3d 633, 638 (9th Cir.1997). Because a court invokes judicial estoppel at its discretion, we review the application of judicial estoppel to the particular facts of a case for abuse of discretion. *United States v. Garcia,* 37 F.3d 1359, 1366–67 (9th Cir.1994).

## Facts

Leslie Johnson has Carpal Tunnel Syndrome. Her condition worsened while she worked for the VRD as an Office Specialist. Ms. Johnson underwent five rounds of surgery for her Carpal Tunnel Syndrome between 1986 and 1994. After the last round of surgery in 1994, her physician recommended a number of accommodations to facilitate her return to work. Ms. Johnson had worked for the state of Oregon for over ten years; she began working for the VRD in 1991.

The VRD terminated Ms. Johnson's employment on September 8, 1994, explaining that they believed her requested accommodations were unreasonable. Ms. Johnson filed a claim under the ADA in September 1995, claiming she was a qualified person with a disability who could perform the essential functions of her job if the VRD would make reasonable accommodations.

## The Trial

After two and one-half days of trial before a jury, during which Ms. Johnson presented her case, the magistrate judge allowed the VRD to renew their earlier summary judgment motion. This unscheduled development was occasioned by the introduction of evidence that Ms. Johnson had applied for disability benefits from three separate sources after she was terminated. In the applications, she had represented that she was disabled.

## The Three Representations

### 1. Social Security

In her application for Social Security benefits, which Ms. Johnson completed early in February 1995, Ms. Johnson filled in the blank space following the instruction "explain how your condition now keeps you from working" as follows:

5 CTS surgeries[;] unable to use hands for repetitive hand movement, grasp, etc. pain and numbness in hands arms—very painful ache lasting for hours/days ... sitting, standing, walking—pain with[in] 5 minutes if wrong [illegible]. . . .

Question 10 asks: "Has your doctor told you to cut back or limit your activities in any way?" Ms. Johnson responded, reiterating the accommodations she had requested from the VRD before her termination. She wrote:

no repetitive fine motor manipulations with any attendant grasping pulling or pushing utilizing hands. No being seated more than 15 minutes. No standing for more than 15 minutes, no bending, stooping or crouching—no lifting over 10–25 # . Limit stress. . . .

Responding to Question 2C, Ms. Johnson explicitly indicated she had needed "accom-

modations" at work, including a "chair . . . no lifting . . . [and] low stress accommodations." Twice, she said that to work she needed accommodations.

Based on Ms. Johnson's application, the Social Security Administration (SSA) determined that, under its definition, Ms. Johnson was not disabled. The SSA therefore denied her benefits.

### 2. Disability Insurance

The second representation involved Ms. Johnson's application for insurance benefits. Ms. Johnson had received short-term disability benefits from Standard Insurance Company (Standard) prior to her termination, during and after her surgery. In mid 1995, the benefits period for short-term disability expired. Standard requires applicants to file a new form to receive long-term disability payments.

On the application for long-term disability benefits, Ms. Johnson verified that her medical condition prevented her from working as of December 16, 1995, the date she filled out the form. To the form's statement: "I returned to work on: ____," she responded with the word "no." She placed a question mark in the blank after the statement "I expect to return to work on ____."

On the rest of the form, Ms. Johnson's doctor was required to detail her disabilities. In response to the form's question: "When do you anticipate the patient can return to work," he wrote "permanent disability." The doctor described her ability to use her hands as "severely limited." Nowhere did Ms. Johnson's doctor state that she was "totally disabled" or unable to perform any work.

Standard deemed Ms. Johnson eligible for long-term disability benefits and began payments on August 22, 1995. In the letter notifying Ms. Johnson of her continuing payments, now under long-term disability, Standard stated: "We have determined that you cannot perform with reasonable continuity the material duties of any occupation which you have the education, training and experience to perform."

### 3. Letter to the IRS

The third representation consisted of a handwritten letter to the IRS in which Ms. Johnson explained why she had filed her 1992 tax return late. In the letter, Ms. Johnson wrote that due to her disabilities, she had not managed her affairs very well, indicated a desire to assume responsibility for her affairs, and described her disabilities. She wrote: "I was certified as severely disabled by Vocational Rehab [VRD]. . . . I have been unable to work since May 25, 1993 due to my disabilities." [2]

### The Magistrate Judge's Ruling

The precise basis for the magistrate judge's oral ruling on judicial estoppel is unclear. On the one hand, he appears to have rejected the idea that a per se rule exists, automatically barring a litigant who has sought and received disability benefits from maintaining a suit under the ADA. The judge said that it is the precise representations made by a claimant about her ability to work that control the application of the doctrine of judicial estoppel. In addition, in support of his opinion, he cited the representations Ms. Johnson made while seeking benefits.

On the other hand, however, some statements by the magistrate judge belie his reliance on the specific representations made by Ms. Johnson as the basis for his decision. The judge made observations regarding the state of the evidence that suggest he *was* applying a per se rule:

> while with the absence of judicial estoppel she *may have raised a question of fact* [regarding her ability with or without accommodation to perform the essential functions of her job], . . . *we are simply, under the doctrine of judicial estoppel, not going to let people* establish a contrary question of fact when they have made representations with the goal in mind of obtaining benefits based on their being total-

---

**2.** At trial, Ms. Johnson explained that May 25, 1993 was the last day she had gone to work for pay. She received short-term disability soon af- ter, from 1993 until 1995. She was terminated in September, 1994.

ly disabled, which, indeed, this plaintiff has.

(emphasis added). He explained that Ms. Johnson had faced a choice after her termination: she could either apply for disability benefits or she could pursue an ADA claim:

> while I would agree with counsel['s] ... description of the choice that faced plaintiff as a Hobson's choice ... it is a tough choice, but it is nonetheless one that the plaintiff has made to seek those long-term disability benefits and to receive them.

Addressing Ms. Johnson directly, he explained:

> I am simply not at liberty, with the authorities that bind my decisions here today, to allow you to seek recovery under the ADA now that you've made those representations [to disability benefits providers], and therefore I must grant the State's motion and dismiss this case.

In the end, the magistrate judge concluded that Ms. Johnson was estopped from claiming she was capable of performing the essential functions of her job. Therefore, she could not establish she was a qualified individual under the ADA pursuant to 42 U.S.C. §§ 12111(8) and 12112(a).

## Discussion

### I. Judicial Estoppel as a Per Se Rule

The magistrate judge's characterization of Ms. Johnson's situation after the VRD fired her was incorrect. The judge described Ms. Johnson as facing a choice—she could either apply for disability benefits or she could pursue an ADA claim. She could not, according to the magistrate, do both. We respectfully disagree.

It is possible, due to the different definitions of disability employed by various agencies, to qualify for disability benefits and to satisfy the ADA's definition of a qualified person with a disability. The distinct purposes of the ADA, Social Security, and disability insurance inform the different definitions of disability employed. Ms. Johnson's case provides an illustration of the results of two different definitions of disability: while Standard found she was disabled and entitled to long-term disability benefits, the SSA found she was *not* disabled and therefore not entitled to benefits.

The ADA requires a highly fact-specific analysis of whether a particular, disabled individual can perform a certain job with (or without) reasonable accommodation. EEOC Enforcement Guidance, EEOC Notice No. 915.002, February 12, 1997, II.A. This accords with the ADA's goals: to prevent discrimination and further work opportunities for those with disabilities. *See* 42 U.S.C. § 12101(b)(1) (stating the ADA provides "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"); *Swanks v. Washington Metro. Area Transit Auth.*, 116 F.3d 582, 584 (D.C.Cir.1997) (discussing statute).

In contrast, the SSA, through a generalized assessment, determines whether an individual is disabled and unable to work. The Social Security Act entitles an individual to disability benefits if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.... For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(a), 423(d)(2)(A). The Social Security Act does not take into account an individual's ability to work with accommodation. *See Swanks*, 116 F.3d at 585 (reviewing federal regulations). Thus, where "a claimant had no accommodation in his or her past work, a Social Security Administration determination that the claimant cannot do past work says nothing about the claimant's ability to perform his or her former job with reasonable accommodation." *Id.* This has led the SSA to conclude: "The ADA and the disability provision of the Social Security Act have different purposes, and have no direct application to one another." *Id.* at 586 (quoting Daniel L. Skoler, Assoc. Comm'r, Soc.

Sec. Admin., Disabilities Act Info. Mem. at 3 (June 2, 1993) (No. SG3P2)).

The Equal Employment Opportunity Commission (EEOC), the agency responsible for implementing the ADA, agrees with the SSA and extends its analysis to other benefits programs in addition to Social Security. A recent EEOC Enforcement Guidance explains:

> Because of the inherent differences in the definitions of the term "qualified individual with a disability" under the ADA and the terms used in ... disability benefits programs ... an individual can meet both the eligibility requirements for receipt of disability benefits and the definition of a "qualified individual with a disability" for ADA purposes. Thus a person's representations that s/he is "disabled" or "totally disabled" for purposes of disability benefits are not necessarily inconsistent with his/her representations that s/he is a "qualified individual with a disability." Accordingly, they should never be an automatic bar to an ADA claim.

EEOC Enforcement Guidance, Notice No. 915.002, February 12, 1997, II.A.

■ Because of the different definitions of disability under the ADA and under the various policies of disability benefits-providers, an individual may be disabled—and therefore entitled to disability benefits so long as she is not working[3]—and still be a qualified individual under the ADA because she can work with reasonable accommodations, if her employer will provide them. Thus, neither application for nor receipt of disability benefits *automatically* bars a claimant from establishing that she is a qualified person with a disability under the ADA.

In so holding, we join the majority of circuits that have ruled on this issue. *See Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir.1998) (citing *Blanton v. Inco Alloys Int'l, Inc.*, 108 F.3d 104, *as amended by* 123 F.3d 916, 917 (6th Cir.1997)) ("statements made in an application for Social Security disability benefits, while relevant, do not result in judicial estoppel"); *Talavera v. School Bd. of Palm Beach County*, 129 F.3d 1214, 1220 (11th Cir.1997) (holding that the district court abused its discretion by applying per se rule of estoppel); *Cleveland*, 120 F.3d at 517–18 (5th Cir.1997) (declining to adopt per se rule and holding that application for or receipt of benefits creates a rebuttable presumption that a plaintiff is judicially estopped from claiming to be a "qualified individual with a disability"); *Swanks*, 116 F.3d at 586 (D.C.Cir.1997) ("the receipt of social security benefits does not preclude ADA relief"); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir.1996) ("determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA").[4]

In a much-discussed and sometimes misinterpreted case, the Third Circuit upheld a district court's use of judicial estoppel to preclude a claimant's ADA claim. *See McNemar v. The Disney Store*, 91 F.3d 610, 619 (3d Cir.1996); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 n. 3 (3d Cir.1997) (reviewing criticism of *McNemar* ). Based on the particular facts and circumstances of that case, the court concluded that McNemar was attempting to take a position in his ADA lawsuit that was irreconcilable with, and flatly contradicted by, statements he had made to the SSA and other benefits providers. *McNemar,* 91 F.3d at 619. The court described the claimant as facing a difficult "choice between obtaining federal or state disability benefits and suing under the ADA." *Id.* at 620. However, the court also emphasized the facts of the case, noting that "appli-

---

**3.** Individuals may also be entitled to some benefits while working. *See* 42 U.S.C. § 422(c) (allowing Social Security benefits during nine-month trial work period).

**4.** The Second Circuit has not ruled on the issue directly. *See Simon v. Safelite Glass Corp.*, 128 F.3d 68, 74 (2d Cir.1997) (saving "for another day" the question of "whether judicial estoppel should preclude a person" from bringing an ADA claim "based on statements made in applying for Social Security benefits").

Two circuits have published conflicting cases. *Compare D'Aprile v. Fleet Servs. Corp.*, 92 F.3d 1, 3–5 (1st Cir.1996) *with August v. Offices Unlimited, Inc.*, 981 F.2d 576, 582 (1st Cir.1992); *see Dush v. Appleton Electric Co.*, 124 F.3d 957, 962 n. 8 (8th Cir.1997) (describing intra-circuit conflict).

cation of the doctrine of judicial estoppel always is factually driven." *Id.* at 613. The facts of *McNemar* included the claimant's blatant lie that he had been unable to work during a period of weeks when he had actually been working. *Id.* at 615, 620.

Since the publication of *McNemar*, the Third Circuit has indicated that "district courts in this circuit are misapplying *McNemar* without first considering the unique facts of that case." *Krouse*, 126 F.3d at 503 n. 5. *McNemar* involved "unconditional assertions as to disability and work," the court explained, and "[c]ourts should not assume that *McNemar* always bars an individual's ADA claims merely because prior representations or determinations of disability exist in the record." *Id.* Thus, *McNemar* does not support a per se rule.

We note that a rule contrary to the one we adopt today would contravene the purposes of the ADA by forcing plaintiffs to choose between enforcing their rights under the ADA and seeking immediate, subsistence benefits. *See, e.g., Swanks*, 116 F.3d at 586 (stating that plaintiffs will be faced with "an 'untenable' choice" if ADA claims are precluded where plaintiffs have applied for disability benefits); *Norris v. Allied–Sysco Food Servs., Inc.*, 948 F.Supp. 1418, 1448 (N.D.Cal.1996) (expressing concern that "given the serious financial constraints that an ill or injured employee often may face" it may not be equitable to force plaintiffs to choose "between applying for disability benefits or filing an ADA lawsuit that may not be resolved for years"); EEOC Enforcement Guidance, EEOC Notice No. 915.002, February 12, 1997, III.B (quoting *Smith v. Dovenmuehle Mortgage Inc.*, 859 F.Supp. 1138, 1142 (N.D.Ill.1994)) (stating that forcing plaintiffs to choose between benefits and ADA claims would place them in an "untenable position" and would force them to choose between what should be independent rights).

Some potential plaintiffs might abandon pursuit of their rights under the ADA if they could not apply for disability benefits. Faced with the financial pressures accompanying

the loss of a job and the uncertainty and length of litigation,[5] individuals might well elect immediate benefits over the pursuit of even the most meritorious ADA claim. Such a situation would not only harm the individuals the ADA seeks to protect, it also would protect the very activity the ADA seeks to eliminate: discrimination against disabled individuals. Employers who discriminate unlawfully would be shielded from liability if their victims could sue them only if they did not apply for disability benefits.

As we have previously emphasized, what may be considered a disability or total disability under legal precepts of certain federal or state disability statutes or private instruments conferring disability benefits may differ under provisions of other federal or state legislation or other private instruments. Therefore, a statement averring a legal conclusion in a previous application or proceeding as to disability may not always preclude eligibility in subsequent applications or proceedings. Having said this, however, we emphasize that material factual statements made by an individual in prior disability applications or proceedings may be binding in subsequent ADA claims.

█ Finally, we note that judicial estoppel is an equitable doctrine, invoked by a court at its own discretion, and driven by the specific facts of a case. *See Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993) (citations omitted); *McNemar*, 91 F.3d at 613. Accordingly, a per se rule barring claimants from pursuing ADA claims after seeking or obtaining benefits would run counter to the doctrine of judicial estoppel itself.

## II. Judicial Estoppel on the Facts of This Case

By holding that claims for and receipt of disability benefits do not automatically preclude claims for ADA protection, we do not hold that a plaintiff's representations on benefits applications are irrelevant to ADA cases. *See, e.g., Swanks*, 116 F.3d at 587 ("The conclusion we reach today does not

---

**5.** Ms. Johnson, for example, filed her claim over two and one-half years ago, and it is far from resolution.

mean that claimants' statements in support of disability claims are never relevant in ADA suits."); *Blanton*, 123 F.3d at 917 (allowing "the consideration of prior sworn statements as a material factor"). To the contrary, such representations constitute useful evidence.

■ For example, a plaintiff's prior representations may be so strong and definitive that they will defeat the plaintiff's prima facie case on traditional summary judgment grounds. In *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1479, 1481 (9th Cir.1996), the plaintiff's sworn statements on disability benefits applications contributed to the judge's holding that no genuine issues of material fact existed sufficient to preclude summary judgment. The plaintiff had claimed she was "completely disabled for all work-related purposes" when she applied for benefits. *Id.* at 1479. In addition, her "personal physician found her totally disabled from all work." *Id.* She then filed an ADA claim and asserted that she was able to perform her job. *Id.* The district court concluded that, given the strength of her prior representations and her physician's opinion, Kennedy's subsequent assertion that she was able to perform her job did not "present a sufficient disagreement to require submission to a jury." *Id.* (internal quotations and citations omitted). Thus, the district court granted Kennedy's employer's motion for summary judgment. We affirmed, explaining that application of the doctrine of judicial estoppel was "unnecessary" because "no genuine issue of material fact" existed. *Id.* at 1481 n. 3.

■ In addition, in clear-cut cases, representations on disability benefits applications may warrant judicial estoppel of ADA claims. *See, e.g., McNemar*, 91 F.3d at 615, 620 (claimant's ADA claim judicially estopped where he claimed before benefits providers that he had been unable to work during a period of weeks when he had actually been working). "[A]n ADA plaintiff should not be permitted to disavow any statements she made in order to obtain [disability] benefits." *Talavera*, 129 F.3d at 1220. Sometimes, prior representations on disability benefits may demonstrate that a claimant is playing fast and loose with the courts, seeking advantage by advancing mutually exclusive contentions before the court and benefits providers. In such cases, courts would be within their discretion to estop plaintiffs.

■ We emphasize that in general, the use of a plaintiff's prior representations on disability benefits as evidence helpful in evaluating an ADA claim—the approach of *Kennedy*—will suffice to protect the sanctity of the judicial process. "Straightforward summary judgment analysis, rather than theories of estoppel" will be appropriate in most cases. *See Griffith*, 135 F.3d at 382–83. Judicial estoppel applies when a party's position is "tantamount to a knowing misrepresentation to or even fraud on the court." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362–63 (3d Cir.1996) (citations and internal quotations omitted). If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply. *See In re Corey*, 892 F.2d 829, 836 (9th Cir.1989) (citations omitted). Thus, if a claimant's particular representations are so inconsistent that they amount to an affront to the court, judicial estoppel may apply.

Comparing each of Ms. Johnson's applications for benefits to her ADA claim, we conclude that judicial estoppel was unwarranted in this case.

## A. Social Security

■ Ms. Johnson described her disabilities in response to the SSA's question: "explain how your condition now keeps you from working." She described the ways in which her doctor had instructed her to limit her activities. The description is a reiteration of the accommodations her physician recommended to the VRD. Ms. Johnson explained that, among other things, she could not perform "repetitive fine motor manipulations," could not be seated or remain standing for more than fifteen minutes, and needed to limit her stress. She does not appear to have exaggerated her condition. The descriptions of her disability and limitations match those presented in this suit. She does, however, state that she was disabled beginning May 25, 1993. That was the last

day she went to work, and the last day she claimed she could work without accommodation. She was not terminated, however, until September, 1994, after she attempted to return to work but was refused the disputed accommodations.

Ms. Johnson's representation is not inconsistent with her ADA claim. The SSA neither asks nor considers whether individuals can work with accommodation. Ms. Johnson did not tell the SSA that she could not work even with accommodation. She has consistently claimed—both before the SSA and before the court—that she can work, but only with accommodations. Thus, her representations to the SSA are not irreconcilable with her ADA claim. Moreover, we are unable to find any evidence in the record suggesting that Ms. Johnson acted in bad faith or was playing fast and loose with the courts. As we have explained, the law does not require plaintiffs to choose between applying for benefits and pursuing an ADA claim. They may do both.

### B. Insurance Disability Benefits

██ On the Attending Physician's Statement, Standard's application for long-term benefits, Ms. Johnson stated that she had not returned to work and placed a question mark in the blank for the date she expected to return to work. Her response is not inconsistent with her ADA claim.

On the same form, her physician, Dr. Huff, responded to questions that requested a description of Ms. Johnson's "sickness or injury causing inability to work," her current limitations and work activity restrictions, her medications, and his opinion regarding when he "anticipate[s] the patient can return to work." To this last question, Dr. Huff responded with the words "permanent disability."

Ms. Johnson does not contest the fact that she has a permanent disability. Her claim is that, although she is permanently disabled, she can nevertheless work, but only with reasonable accommodations. Thus, Dr. Huff's statement, and her acceptance of it, does not necessarily conflict with her ADA claim.

The definition of disability for long-term benefits under the Standard policy is "disability from all occupations." Standard's policy explains to applicants: "You are disabled from all occupations if, as a result of sickness, injury or pregnancy, you are unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

Standard does not state whether applicants are ineligible if they believe they can work with accommodation but their employer denies it. In addition, Standard does not seek information regarding potential accommodations on their application.

At trial, Ms. Johnson explained her acceptance of the long-term disability payments, despite her belief that she could work with accommodation. She did not contest the insurance company's finding of eligibility, she explained, because she needed to support herself and every agency seemed to have its own definition of disability. On the stand, she stated "if by [Standard's] definition and after their examination, they found that I came under their definition, I accepted it . . . I agreed that I was unable to go back without accommodation." Such an explanation is plausible and does not suggest that Ms. Johnson was attempting to perpetrate a fraud upon the court.

### C. Letter to the IRS

██ In a handwritten letter to the IRS asking for leniency regarding her late tax return, Ms. Johnson made various statements including that she was "totally disabled" and "unable to work since May 25, 1993." According to her ADA claim, Ms. Johnson is permanently disabled and was unable to work without reasonable accommodation. Ms. Johnson states in her brief that her letter would have been more accurate if she had written she "was unable to work and fired because of her disabilities and because defendant refused her reasonable accommodation. But, the context of the letter did not require that detail."

The categorical statement in Ms. Johnson's letter is troubling. However, given the context in which the letter was written, the

statement does not represent an affront to the court sufficient to warrant judicial estoppel. She was not seeking financial benefits from the agency, she was merely asking for leniency regarding her late tax return. What mattered to the IRS was not that Ms. Johnson might sue her former employer because she believed they had discriminated against her. What mattered was the reason for her late tax return.

## Conclusion

Given this record and the facts and circumstances of this case, the magistrate judge's observation that the evidence presented by Ms. Johnson "may have raised a question of fact" is incompatible with the grant of summary judgment in favor of the VRD. Genuine issues of material fact unencumbered by evidence that the court is being used for an improper purpose are precisely what engages a court's jurisdiction. Accordingly, we reverse the opinion of the district court and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.