**Carl SWONKE, Plaintiff,**

v.

**SPRINT INC., Sprint/United Management Company, d/b/a Sprint, John Grismore, and Does 1 to 10, inclusive, Defendants.**

**No. C02–5039 TEH.**

United States District Court, N.D. California.

April 26, 2004.

Kathleen A. McCormac, McCormac & Associates, San Francisco, CA, for Plaintiff.

Sonia Renee Martin, Sonnenschein, Nath & Rosenthal, San Francisco, CA, Lloyd C. Loomis, Sonnenschein, Nath & Rosenthal, Los Angeles, CA, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

HENDERSON, District Judge.

### INTRODUCTION

This is a disability discrimination case brought by plaintiff Carl Swonke against his former employer Sprint, pursuant to the California Fair Employment & Housing Act (FEHA). Plaintiff had a number of physical disabilities which he claims Sprint failed to accommodate and which he asserts ultimately motivated defendant to terminate his employment. Sprint denies these charges and moves for summary judgment. The Court heard oral argument on March 29, 2004. Having fully considered all briefs and evidence submitted by the parties, as well as the oral

argument of counsel, the Court hereby grants defendant's motion for summary judgment, as discussed below.

## FACTUAL BACKGROUND

Plaintiff began working for Sprint in 1998 as a sales associate. He was quickly promoted to a supervisory position hiring and training new sales associates.

In October 1999 plaintiff was in an accident during a work-sponsored trip causing injury to his pancreas and a minor head injury. His supervisor accommodated his pancreas disability by allowing plaintiff time off for doctor appointments and breaks whenever he suffered pancreatic attacks.

In July 2000 plaintiff was promoted to a Retail Sales Manager position in the Broadband Wireless Group ("BWG") in Burlingame, which provides high-speed internet service. Plaintiff was responsible for securing sales of Sprint's broadband products through large retailers. He advised his manager, Mr. Robinson, of his disability, and Robinson continued the accommodations.

In late 2000 Mr. Robinson was replaced by John Grismore. Plaintiff told Mr. Grismore about his disability, and plaintiff continued to take breaks as needed. However, at a certain point Mr. Grismore asked plaintiff for documentary proof of his disability. Plaintiff contacted Human Resources and others to try to get the proper workers' compensation records. Plaintiff provided some documentation to Grismore, which appears to be a few blank forms and other documents which plaintiff fails to describe in any detail. Mr. Grismore told plaintiff that the documents were insufficient. Plaintiff continued his effort with Human Resources to provide appropriate documentation to Grismore, but without success, and plaintiff never gave Mr. Grismore any records from plaintiff's own files.

On April 9, 2001 plaintiff slipped on a ladder at work and twisted his knee. He did not seek medical help and continued working as usual (including walking, light lifting, etc.), but several days later during a routine chiropractic visit he was told it might be more than just a slight strain and that he should report the injury to the workers' compensation carrier. Plaintiff e-mailed Mr. Grismore the next day about the knee injury and then went to Kaiser Hospital. He was diagnosed with a meniscal tear of the knee, and the doctor placed him off work, limiting him to sedentary activities, and noting that he could participate in modified work starting April 30, 2001. Mr. Grismore was not pleased that plaintiff waited six days to report his knee injury, and he seems to have been skeptical about whether there was any significant injury at all (a number of other employees told Mr. Grismore that they saw plaintiff during the week after the knee strain incident bending, lifting, etc. with no problems). Mr. Grismore wrote to the Regional Sales Manager, Steve Rowley, suggesting that plaintiff receive a written warning for waiting so long to report the injury. However, Mr. Rowley did not issue a warning and plaintiff was not reprimanded in any way.

During the second half of April, plaintiff stayed home but continued a number of his sales manager duties by phone, including staying in daily contact with his account executive and participating in some work meetings. Then Mr. Grismore and a Human Resources representative e-mailed plaintiff telling him to stop engaging in any work and to focus his energy on his recovery. Sprint placed plaintiff on short-term disability leave ("STD").

On April 24, 2001 plaintiff called Sprint's Ethics Helpline to complain about Mr. Grismore's treatment of him. Plaintiff believed that Mr. Grismore was denying him

reasonable accommodations and was using plaintiff's disabilities to prevent him from working at all. Sprint recorded the complaint, but it never took any action. The Helpline log entries show that once plaintiff went on disability leave, the company put the complaint on hold.

From April 2001 to early 2003, plaintiff continued to stay home from work based on his disabilities. He produced a series of twenty-one (21) notes from medical providers to support his inability to return to work. Some of the notes indicate a short-term rehabilitation period (e.g. after outpatient surgery on the knee) followed by an anticipated return to work with or without restrictions. However, each of these is overridden by another doctor's note extending the time off work. A full chronology of all the doctors' notes shows that plaintiff was completely excused from work for the entire period from April 18, 2001 to March 15, 2003. *See* Def.'s Reply Brief, Appendix A (and exhibits referenced therein).

In August 2001, Sprint "reorganized" the Broadband Wireless Group, based on its decision that the technology it was selling essentially had become obsolete. The company closed plaintiff's sales office. Rather than terminating plaintiff, however, Sprint technically reassigned him to the San Jose office, although he did not go there to work. Defendant explains that it kept him on the payroll under the San Jose manager so that he could exhaust his short-term disability benefits.

In October 2001, in a second wave of "restructuring," Sprint eliminated plaintiff's job. Plaintiff applied for long-term disability benefits ("LTD"), and the company placed him on unpaid leave during the processing of the application. In January 2002 the company denied LTD benefits, based on Sprint's physician's determination that he was not disabled, at which point plaintiff was terminated with six weeks of severance pay. Plaintiff appealed the denial of LTD benefits, submitting an application stating that his injuries "prevent[ ] me from engaging in any gainful employment," and a doctor's letter stating that plaintiff was "unable to perform the job duties as dictated by his occupation." Plaintiff won his appeal. To this date, plaintiff continues to receive LTD benefits, and his doctors have not released him to perform any work.

After being terminated, plaintiff sent letters of application to a number of other Sprint divisions seeking a managerial position. He was not interviewed or hired for any of those jobs.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *U.S. v. 45/194 Kg. Drums of Pure Vegetable Oil,* 961 F.2d 808, 811 (9th Cir.1992). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. *Id* at 255, 106 S.Ct. 2505.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). Where the moving party will have the burden of proof on an issue at trial, he or she must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322–323, 106 S.Ct. 2548. However, on an issue for which her opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

## DISCUSSION

### A. Is Plaintiff an "Otherwise Qualified" Individual?

To establish a prima facie claim for violation of the California Fair Employment and Housing Act (FEHA), plaintiff must introduce evidence demonstrating that he: (1) has a disability, (2) is otherwise qualified for employment, and (3) has suffered an adverse employment action because of the disability. *Brundage v. Hahn,* 57 Cal. App.4th 228, 236, 66 Cal.Rptr.2d 830 (1997). Defendant does not contest that plaintiff has a disability.

■ With regard to the second prong of the test, a person is "otherwise qualified" only if he is capable of performing the essential functions of the job with or without reasonable accommodation. Cal. Gov't Code § 12940(a)(1); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). Focusing only on the pancreatitis, plaintiff clearly was otherwise qualified, as he worked at Sprint for years, with accommodation, and received positive performance reviews.

■ Focusing on the knee injury, the Court's initial impression was that it would not seem to be so severe as to prevent him from doing his job (based on the minimal evidence presented), except during the short periods following the injury and surgery. As a retail sales manager, plaintiff was not required to lift more than 10 pounds (briefcase and laptop), and much of his work was sedentary with periodic standing and walking in the office and to and from sales calls. Thus, a common sense approach to plaintiff's knee disability would indicate that, at least in the abstract, he would be otherwise qualified.

However, on the facts of this particular case, plaintiff's own medical providers designated him as unable to work at all based on the knee injury for two years. Plaintiff contends that in spite of his medical providers' designations, he was able to perform some duties, as evidenced by the work he performed from home for a week or so in mid-April 2001. There is no evidence in the record, however, supporting plaintiff's ability to meet his job responsibilities from home or otherwise after that brief period. Rather, it is undisputed that Sprint was told by plaintiff's medical providers that he was unable to work, even with modifications, from April 2001 forward, and the company acted accordingly by telling plaintiff to stay home, recuperate, and return to work when ready. Many months then passed, extending well beyond the knee surgery, with no indication from plaintiff or, more importantly, his medical providers that he was capable of returning to work. Even if a doctor were to testify later in deposition or at trial that plaintiff was physically able to have performed his work with modifications, it would not alter the facts as they were plainly presented to Sprint at the time. To rule in favor of plaintiff on this point would be to hold that the employer should have returned plaintiff to work when the professional medical judgment was that he was physically incapacitated. *See Ott v. Crown Cork & Seal Co.,* 1997

WL 231110, *6 (N.D.Cal.1997) ("given the medical evidence presented, plaintiff's subjective opinion concerning his ability to work is facially insufficient to establish that he was qualified to return to work"); 2 Cal.Code Reg. § 7297.4(b)(2)(E) (entitling employer to insist on doctor's release verifying that the employee is able to return to work following medical leave).

Plaintiff attempts to evade the clear dictates of his medical providers' advice in ways that are entirely unpersuasive to the Court. First, plaintiff focuses on selected doctor's notes in isolation, each of which makes it appear that plaintiff's knee disability is short-term and that he would be returning to work, with or without modifications, within a matter of weeks. However, when the doctor's notes are reviewed as a whole, one sees that prior to each date the doctor anticipates plaintiff will return to work, a new note excuses plaintiff for a longer period of time. Thus, there was not a single day after the onset of the knee injury in April 2001 when plaintiff was actually released to work even with restrictions.

Plaintiff's second attempt to evade the import of the medical advice is particularly troubling to the Court. Plaintiff's first six notes relating to the knee injury, excusing him from work from April to September 2001, were from Dr. Raphael at Kaiser. The remaining notes, excusing him from work from September 2001 to March 2003, were from William King of the Martinez Chiropractic Center. When plaintiff sent these notes to Sprint, he represented that they were from his "physician." *See* Def.'s Index of Evidence, Exh. B (Exh. 18 to Pl.'s Depo.). On each note King signed next to the printed space for "Dr. Signature." At oral argument, however, plaintiff's counsel informed the Court that Mr. King is not a

doctor. Plaintiff further argued to the Court that as a legal matter a doctor's advice "trumps" that of a chiropractor. Plaintiff thus concludes that Dr. Raphael's last note, which provides an anticipated return to work date of September 15, 2001, should be the final word, and that the year and a half's worth of chiropractic notes designating plaintiff as disabled should be disregarded.

The Court simply cannot accept this argument. If plaintiff's doctor had cleared him to return to work, and Sprint were contradicting that position with its own chiropractor, then the Court would be presented with a material conflict that should await resolution by a jury. But here all of the notes were submitted by plaintiff, with the unambiguous representation that they were written by appropriate health care providers. The semantics of who is or is not a "doctor,"[1] and the gamesmanship of whose advice should be credited, are irrelevant to resolution of this matter. The only point of any import is that, all told, the notes state without contradiction or ambiguity that plaintiff was not able to return to work. For the Court to find a *genuine* dispute on these facts would be to engage in a level of fiction unwarranted by controlling legal standards. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Furthermore, plaintiff himself characterized his disabilities in the aggregate (pancreatitis, knee injury, head injury, and a torn rotator cuff resulting from crutches set at the improper height after the knee surgery) as preventing him from performing *any* of his job duties when he sought long-term disability benefits. For example, on January 17, 2002, plaintiff wrote the following to Human Resources:

[M]y work related injuries resulted in one surgery, several more scheduled in

---

1. Although the notes do not indicate King's level of accreditation, the Court has uncovered a letter in the record indicating that he is

a "D.C.," or doctor of chiropractic. *See* Def.'s Index of Evidence, Exh. B (Exh. 5).

the future ... Therefore, Sprint's offer for career transition services and job opportunities are not valid at this time. Before I can return to gainful employment, I am required by California law to be released by all treating physicians. The releases will only be authorized once all the surgeries and rehab have been completed.

Def.'s Index of Evidence, Exh. B (Exh. 17); *see also* Def.'s Index of Evidence, Exh. B (Exh. 5) (letter dated February 6, 2002 from W. King, stating that "it is my medical opinion that Mr. Swonke is unable to perform the job duties as dictated by his occupation.").

The Ninth Circuit has addressed very similar situations—where a plaintiff applies for disability benefits based on his total inability to work, and later sues on the theory that he could have worked with accommodation—and held that statements as to a plaintiff's inability to work are highly relevant in a summary judgment analysis. *See Fredenburg v. Contra Costa County Dept. of Health Services,* 172 F.3d 1176, 1179 (9th Cir.1999); *Johnson v. State of Oregon,* 141 F.3d 1361 (9th Cir.1998); *Kennedy v. Applause, Inc.,* 90 F.3d 1477 (9th Cir.1996). However, addressing a defense that a plaintiff's prior claim of total disability should provide a basis for judicial estoppel of any later inconsistent claim, the court has held that the plaintiff is not automatically barred. The Ninth Circuit explained in *Johnson* that the standards governing the decision whether to grant disability benefits may be different than the standard under the ADA or FEHA. Thus, the courts must take a case-by-case approach to evaluate the particular statements and facts that have been asserted. The court reasoned as follows:

Some potential plaintiffs might abandon pursuit of their rights under the ADA if they could not apply for disability benefits. Faced with the financial pressures accompanying the loss of a job and the uncertainty and length of litigation, individuals might well elect immediate benefits over the pursuit of even the most meritorious ADA claim. Such a situation would not only harm the individuals the ADA seeks to protect, it also would protect the very activity the ADA seeks to eliminate: discrimination against disabled individuals. Employers who discriminate unlawfully would be shielded from liability if their victims could sue them only if they did not apply for disability benefits.

As we have previously emphasized, what may be considered a disability or total disability under legal precepts of certain federal or state disability statutes or private instruments conferring disability benefits may differ under provisions of other federal or state legislation or other private instruments. Therefore, a statement averring a *legal conclusion* in a previous application or proceeding as to disability may not always preclude eligibility in subsequent applications or proceedings. Having said this, however, we emphasize that *material factual statements* made by an individual in prior disability applications or proceedings may be binding in subsequent ADA claims.

*Johnson,* 141 F.3d at 1369 (emphasis added).

■ In this case, the Ninth Circuit's analysis saves plaintiff from a *per se* rejection of his position on estoppel grounds, but it still leaves him with the evidentiary problem of having made material factual statements as to his total disability and having acted in accordance. In other words, the problem is not that his positions are logically inconsistent, it is that he so consistently acted in accordance with being totally disabled.

Based on the analysis presented above, the Court does not find that plaintiff has presented any genuine issue of material

fact as to whether he was otherwise qualified with respect to his knee injury, nor with respect to his aggregate of injuries following the knee incident.

Nevertheless, for the purpose of providing a complete analysis, the Court will address plaintiff's discrimination and accommodation claims. As discussed below, even in the event that plaintiff were to be considered otherwise qualified, there are no genuine issues of material fact as to whether plaintiff suffered discrimination or a failure to accommodate disability.

### B. Plaintiff's Discrimination Claim

■ Plaintiff claims that his termination was discriminatory because it was based on his disability. However, Sprint has presented documents and testimony showing that the reduction in force (RIF) was a legitimate business decision. Plaintiff in fact conceded at oral argument that the company made "drastic lay-offs" in the Broadband group. Plaintiff was on disability leave at the time of the lay-off, but this does not immunize him from termination. The evidence shows that *all* employees in his work group were terminated, and that he was treated no worse than anyone else. Plaintiff simply has no evidence to create a material dispute as to the issue of causation. *See Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1733, 35 Cal.Rptr.2d 181 (1994).

■ Plaintiff also claims that he should have been offered an alternative position. He applied for various managerial positions and was denied even an interview for all of them. However, Sprint has presented uncontradicted testimony and evidence that the decision-makers for each of these openings had no knowledge of plaintiff's disabilities, and therefore could not have based their decisions on his disabilities.

Again, plaintiff simply has no evidence to create a material dispute as to the issue of causation.

### C. Plaintiff's Claim for Failure to Accommodate Disability

■ Plaintiff asserts that defendant failed to accommodate his disability in a number of ways. First, with respect to his pancreatic disability, he claims that Mr. Grismore should have continued the practice of plaintiff's previous managers by allowing plaintiff time to rest. However, the evidence does not indicate a failure to provide such accommodations. When Mr. Grismore first became plaintiff's supervisor, plaintiff told him about his pancreas condition and need for accommodations, and Mr. Grismore "said that would be fine with him." Potter Dec., Exh. A (Swonke Depo. 52:6). In fact, plaintiff continued to take rest breaks just as he had done when working for his previous supervisors. *Id.* (Swonke Depo. 62:22–25) Plaintiff himself was a manager, and his own testimony indicates that he took time off during the day when he needed to, and then made up the time on his own schedule. The following month, Mr. Grismore asked plaintiff to work at a trade show over the coming weekend, and plaintiff requested the weekend off because he felt it would be too physically taxing to work a seven-day week given his condition. Mr. Grismore then asked for documentation of the disability, which, as discussed above, plaintiff never successfully presented. *See Allen v. Pacific Bell*, 348 F.3d 1113, 1115 (9th Cir.2003) (plaintiff's failure to submit medical evidence obviated employer's obligation to engage further in interactive process regarding accommodation).[2] Plaintiff ended up working the trade show, apparently without problems. Thus, the

---

**2.** Decisions interpreting the ADA "may be useful in deciding cases under the FEHA." *Spitzer v. The Good Guys*, 80 Cal.App.4th

1376, 1384, 96 Cal.Rptr.2d 236 (2000) (citation omitted); *Allen*, 348 F.3d at 1114 n. 1.

undisputed evidence shows that the only actual accommodation plaintiff was allegedly denied was time off for a single weekend, which he ended up working successfully. As a matter of law, this does not rise to the level of an adverse action. *See Akers v. County of San Diego,* 95 Cal. App.4th 1441, 1455, 116 Cal.Rptr.2d 602 (2002) (adverse action under FEHA refers to conduct resulting in a "substantial" or "material" effect on the terms and conditions of plaintiff's employment; a change that is "merely contrary to the employee's interests or not to the employee's liking is insufficient").

Plaintiff also fails to provide any authority indicating that Mr. Grismore was not entitled to ask for the documentation. Furthermore, plaintiff's effort to blame Sprint for failing to provide him with his worker's compensation records does not withstand scrutiny. When asked at oral argument why plaintiff did not simply provide his own documentation of the pancreatic disability, plaintiff's counsel confirmed that plaintiff did possess his own documentation, but counsel inexplicably insisted that plaintiff was justified in waiting for Sprint to supply its own paperwork.

In conclusion, the Court finds no genuine dispute of material fact as to whether defendant reasonably accommodated plaintiff's pancreatic disability.

 Second, with respect to the knee injury, plaintiff claims that after sustaining the injury he would have been able to work with a modified schedule, rest breaks, and the ability to work from home. As discussed above, this is inconsistent with his submission of repeated doctor's notes excusing him entirely from work, and from his claim of total disability for long-term disability benefits. Since plaintiff himself consistently indicated to his employer that he was incapacitated from working, it is hardly Sprint's responsibility for failing to offer accommodations.

The FEHA incorporates the EEOC's interpretative guidance to the ADA on the issue of reasonable accommodation. Cal. Gov't Code § 12941.6(e). The EEOC provides that

[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o*)(3). The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation.

 Plaintiff blames Sprint for failing to engage in the interactive process with him. However, on the facts of this case, there was nothing the employer could do until it received notice that plaintiff would be released to work with or without restrictions. Given the series of medical providers' notes that plaintiff presented to the company, as discussed above, there were no accommodations that could have possibly been consistent with the medical opinion that he was totally disabled from any employment. The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile.

 Plaintiff's argument that he should have been given another managerial job, discussed above as a discrimination claim, also can be read as a claim for failure to accommodate. As the court held in *Spitzer,* 80 Cal.App.4th at 1389, 96 Cal. Rptr.2d 236:

The responsibility to reassign a disabled employee who cannot be otherwise accommodated does "not require creating a new job, moving another employee,

promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement" (citation omitted) but it nevertheless does entail affirmative action... "[A]n employer has a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists." (citation omitted) (emphasis in original).

While the Court fully recognizes the obligation imposed upon employers, on the facts of this case there simply could not have been a job that plaintiff could have been assigned to, given the opinion of his medical providers. The employer cannot be required to find a job for an employee when no such position could be created even hypothetically.

◼ Plaintiff's other accommodation claims border on the frivolous. He asserts that he was harassed and that he was "negatively portrayed" to others, but the undisputed evidence shows that these claims are based on his own over-reaction to defendant's unremarkable actions. For example, when his managers told him to stay home and recuperate, he took it as an order to stop all work as part of a plan to prevent him from returning to the company. Plaintiff also contends that he was "relieved of management responsibilities" and was "denied the opportunity to generate income." Pl.'s Opp. at 15. He does not explain these purported adverse actions, and does not provide any evidentiary proof. Further, the evidence suggests that plaintiff was paid in full until well after the RIF, and plaintiff has submitted to evidence whatsoever indicating any income loss. Not only are these alleged failures to accommodate unsupported by the record, they also fail as a matter of law to rise to the level of legally cognizable adverse actions. *See Akers,* 95 Cal. App.4th at 1455, 116 Cal.Rptr.2d 602.

### D. Plaintiff's Claim for Punitive Damages

◼ Given the rulings above, plaintiff's failure to present a genuine issue of material fact as to liability prevents him from proceeding to the issue of punitive damages. Nonetheless, the Court notes that plaintiff has the burden of showing by "clear and convincing evidence" that an officer, director, or "managing agent" of Sprint acted with "malice, oppression, or fraud." Cal. Civ.Code § 3294. Even if plaintiff had presented enough evidence to defeat summary judgment on his discrimination or accommodation claim, he has not addressed whether the decision-makers at Sprint were managing agents. Plaintiff's counsel addressed this issue only when prompted by the Court's question at oral argument, even though it was squarely raised in defendant's opening brief. While it is certainly conceivable that Mr. Grismore and perhaps other managers involved in the actions relevant to this case were managing agents, plaintiff still failed to present the Court with a single piece of evidence (such as an organizational chart or deposition testimony) to show the existence of an actual material fact to this effect.

Furthermore, the sum total of the evidence plaintiff presents as supporting a punitive damages award—Mr. Grismore's suggestion (which was not followed) that plaintiff be reprimanded for reporting his knee injury six days after the fact, Mr. Grismore's alleged skepticism about the seriousness of the knee injury, and his request for documentation of the pancreatic injury prior to the trade show (Pl.'s Opp. at 24)—fails as a matter of law even to approach the threshold of malice, oppression, or fraud.[3]

**3.** In the Reply brief, defendant filed a number of objections to plaintiff's evidence. The ob-

## CONCLUSION

For the reasons discussed above, and with GOOD CAUSE APPEARING, the Court hereby ORDERS that defendant's Motion for Summary Judgment is GRANTED.

**SO ORDERED.**

jections are overruled.