Filed 3/8/22  Crisan v. State Dept. of State Hospitals CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MARCELLA CRISAN, | C089985 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2015-00174376-CU-OE-GDS) |
| v. | |
| STATE DEPARTMENT OF STATE HOSPITALS, | |
| Defendant and Respondent. | |

Prior to the dissolution of the State Department of Mental Health, Marcella Crisan worked as the sole financial officer in charge of the Forensic Conditional Release Program (CONREP) for that department.  State audits conducted between 2008 and 2010 revealed that the State Department of Mental Health routinely ran multimillion dollar budget deficits.  In 2011, Governor Brown signed legislation dismantling the State Department of Mental Health and transferring some services to counties, some to other state departments, and the remainder to a new State Department of State Hospitals (Department).  Crisan's program was transferred to the newly created Department.  The

1

Department's deputy director, Cynthia Rodriguez, determined that the most effective way to transition the assumed services to a new budget methodology was to require all fiscal employees to work in person at its headquarters in Sacramento so that they could interact with each other and vendors during the transition period. After being notified in January 2012 that Crisan would be required to work in Sacramento, she sought to continue working from home in Chico by requesting, for the first time, an accommodation for a decade-old back injury.

The Department offered accommodations that Crisan's doctor prescribed for her back care, including time to apply moist heat and stretch, time to take medication, not to sit longer than 30 minutes, and not to work a continuous eight hours per day. Crisan, however, refused to work in person in Sacramento. Crisan submitted to the Department a doctor's note requesting a leave of absence, effective as of February 2, 2012. Evidence introduced at trial showed that Crisan subsequently presented several more doctor's notes excusing her entirely from work. Crisan never returned to work but instead secured disability retirement.

Crisan filed this action for retaliation under the California Whistleblower Protection Act (Gov. Code, § 8547 et seq.)[1] (CWPA) and for disability discrimination under the California Fair Employment and Housing Act (§ 12900 et seq.) (FEHA). Her claims for disability discrimination and whistleblower retaliation were dismissed on summary adjudication. However, while the motion for summary judgment/adjudication was pending, Crisan amended her complaint to include claims for failure to accommodate a disability (§ 12940, subd. (m)) and failure to engage in the interactive process (§ 12940, subd. (n)). During trial, Crisan dismissed her claim for failure to engage in the interactive

---

[1]     Undesignated statutory citations are to the Government Code.

2

process. The jury returned a defense verdict on her remaining claim of failure to accommodate.

On appeal, Crisan contends (1) the trial court erred in excluding, on grounds of lack of authentication, evidentiary documents attached to her attorney's declaration, (2) the trial court erred in granting summary adjudication on her claims for disability discrimination and whistleblower retaliation because she made a prima facie showing that supported her claims, (3) her evidence sufficed for a prima facie showing that the Department's requirement that she work in Sacramento was a pretext for unlawful retaliation and discrimination, (4) the trial court erred in excluding evidence of the Department's failure to accommodate her after February 2, 2012, and (5) the trial court erred in allowing deposition testimony of an unavailable witness to be read to the jury.

We conclude that Crisan cannot show prejudice from the exclusion of her proposed evidence because she does not address two of the three grounds for the trial court's ruling. The trial court properly granted summary adjudication on Crisan's claim for disability discrimination because the undisputed evidence showed that the Department's decision to require her to work in Sacramento was made before she informed the Department of her back injury. Likewise, the claim for whistleblower retaliation was undermined by the Department's showing that the decisionmaker was unaware of Crisan's complaints and reports of impropriety relating to CONREP when the decision to require in-person attendance in Sacramento was made. Evidence that Crisan was unable to work at all after February 2, 2012, established that the Department had no obligation (or ability) to accommodate her after that date. Finally, Crisan has not preserved her appellate argument regarding the admission of deposition testimony at trial because she did not preserve the argument with a timely objection on the same grounds. Accordingly, we affirm the judgment.

# BACKGROUND

## *Summary Adjudication*

In July 2014, Crisan filed a first amended complaint that alleged causes of action for retaliation under the CWPA and disability discrimination under FEHA. The Department moved for summary judgment/adjudication as to both causes of action. Crisan opposed the motion. We recount the arguments and factual claims made in the motion for summary judgment/adjudication and the opposition in greater detail below where we assess Crisan's arguments regarding summary adjudication.

The trial court granted summary adjudication in favor of the Department on the claims for retaliation and disability discrimination. The trial court found that the undisputed evidence established the Department did not act with discriminatory or retaliative motive and that the Department had a legitimate reason to require Crisan to work in person in Sacramento.

## *Jury Verdict*

After the Department moved for summary judgment/adjudication and before the trial court ruled on the motion, Crisan amended her complaint to state additional causes of action for failure to accommodate a disability (§ 12940, subd. (m)) and failure to engage in the interactive process (§ 12940, subd. (n)). The matter proceeded to a jury trial. We recount the facts shown by the evidence at trial in greater detail where we consider Crisan's arguments relating to the trial. During trial, Crisan withdrew her claim for failure to engage in the interactive process. The jury rejected Crisan's claim that the Department failed to accommodate her disability. In May 2019, the trial court entered judgment on the jury's verdict. Crisan timely filed a notice of appeal.

# DISCUSSION

## I

### *Exclusion of Evidence*

Crisan contends the trial court erred in excluding attachments to her attorney's declaration for lack of authentication. The attachments were offered in response to the Department's motion for summary adjudication. We reject Crisan's argument because her appellate briefing does not identify any of the excluded attachments on which her argument rests. Even if the trial court had committed error regarding authentication of the offered attachments, the two unchallenged bases for the trial court's evidentiary ruling provide alternate grounds for affirming the judgment.

### A.

### *The Trial Court's Order*

In pertinent part, the trial court's order granting summary adjudication stated: "Defendants' written objections to plaintiff's evidence are sustained <u>except</u> for objection Nos. 53-55 and 59, each of which is overruled. The court notes that objection Nos. 1-51 were sustained in part because the Ulmer Declaration[2] fails to affirmatively establish not only the declarant's own 'personal knowledge' regarding the exhibits being referenced *but also* a sufficient foundation for proper authentication of these exhibits. *Additionally*, those paragraphs of the Ulmer Declaration and the opposition's exhibits which purport to establish that plaintiff was an 'out-stationed employee' working from her 'home office' in Chico and her request to have her disability accommodated by being permitted to work at home do not appear to be relevant to the disposition of the two causes of action actually asserted in the [first amended complaint]." (Italics added.)

---

**2**    Attorney Derek K. Ulmer represented Crisan in the trial court.

5

The trial court's order made additional findings that evidence offered by Crisan was not relevant to create any disputed issues of material facts. For example, the trial court found irrelevant or nonresponsive evidence that Crisan offered to show that she was a good employee, that she filed complaints about misuse of funds after the decision was made to require her to work in Sacramento, that she made a request for accommodation after the decision requiring her to work in Sacramento was made, and that someone other than the sole decisionmaker might have been biased against her.

Thus, the trial court's order excluding exhibits to the Ulmer declaration rested on three separate grounds: (1) there was insufficient showing of personal knowledge regarding the exhibits, (2) there was insufficient foundation to authenticate the exhibits, *and* (3) the exhibits were irrelevant or nonresponsive.

## B.

### *Scope of Review*

It is well settled that we limit our review only to evidentiary challenges that specifically identify the evidence for which error is claimed. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 656; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) Crisan's opening brief, however, does not identify or describe the particular exhibits to which her argument pertains. Indeed, Crisan's opening brief does not even cite where the excluded exhibits may be found in the appellate record. Accordingly, the evidentiary challenge is not sufficiently presented to warrant appellate review.

## C.

### *Blanket Ruling*

We reject Crisan's assertion that the trial court in this case issued a "blanket ruling" on the evidence that violated the holding in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243 (*Nazir*). Notably, Crisan's argument acknowledges that the trial court's ruling did not grant all of the Department's evidentiary objections. The record

6

shows that the trial court overruled four of the Department's evidentiary objections. And, as to the 51 evidentiary objections to the Ulmer declaration that the trial court sustained, the trial court explained that the ruling was based on lack of personal knowledge and lack of sufficient foundation. The trial court further explained that portions of the Ulmer declaration relating to allegations of being "an 'out-stationed employee' working from her 'home office' in Chico" were irrelevant to the causes of action alleged in the first amended complaint for retaliation under the CWPA and disability discrimination under FEHA against the Department.

The ruling in this case differs from that presented in *Nazir, supra,* 178 Cal.App.4th 243, where the trial court sustained all but one of defendants' 764 evidentiary objections without explaining the basis for sustaining the objections. (*Id.* at p. 255.) The *Nazir* court reversed on grounds that the trial court's complete failure to set forth the grounds for its blanket evidentiary ruling effectively precluded any meaningful appellate review. (*Ibid.*) This case does not involve a blanket ruling. Here, the trial court showed that it separated admissible from inadmissible evidence and identified three bases why the evidence was inadmissible. We are able to identify which basis for evidentiary inadmissibility corresponds to each of the sustained objections. We reject Crisan's reliance on *Nazir*.

## D.

### *Lack of Prejudice*

Moreover, Crisan's argument cannot establish prejudice from the trial court's order. On appeal, we may affirm the trial court's judgment on any correct legal ground supported by the record. (*Taylor v. Elliott Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 573, fn. 5.) Here, the trial court's order on summary adjudication excluded the exhibits attached to the Ulmer declaration on three separate grounds. Although Crisan challenges the first ground regarding failure to authenticate the exhibits,

7

she does not address the trial court's second ground regarding personal knowledge *or* the third ground regarding the irrelevant and nonresponsive nature of her offered evidence. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [holding that issues not raised in an appellant's opening brief are deemed abandoned].) Thus, even if Crisan could establish error in the trial court's exclusion of the attachments for lack of authentication, we would be compelled to affirm on the unchallenged grounds that the evidence was inadmissible for lack of personal knowledge and because it was irrelevant and nonresponsive. Accordingly, we reject Crisan's argument regarding authentication for lack of prejudice because a single valid basis is sufficient to affirm the trial court's decision. (*Salazar v. Southern Cal. Gas Co*. (1997) 54 Cal.App.4th 1370, 1376; *Waller v. TJD, Inc*. (1993) 12 Cal.App.4th 830, 833.) Here, we have two.

## II

### *Disability Discrimination and Whistleblower Retaliation*

Crisan next argues that, even in the absence of the evidence excluded by the trial court, she demonstrated triable issues of fact for her claims of disability discrimination and whistleblower retaliation. We are not persuaded.

### A.

### *Summary Adjudication*

In support of the motion for summary judgment/adjudication, the Department introduced evidence showing the following: Beginning in October 2001, Crisan was the sole financial officer for CONREP. In 2004, Crisan began working remotely from Chico. In November or December 2011, Cynthia Rodriguez was chief counsel and deputy director of the newly formed Department. At that time, she made the decision to centralize all fiscal operations at the new Department's headquarters. Rodriguez made the decision by herself and reported her decision to Mark Grabau (the chief psychologist for CONREP) and Heather Riis (the staff services manager to whom Crisan reported). This decision applied to Crisan as the financial officer of CONREP.

8

At the time that Rodriguez decided that Crisan would be required to work at the Sacramento headquarters, Rodriguez was not aware that Crisan was disabled or had claimed any disability. Rodriguez was also not aware of any reports, complaints, or statements made by Crisan about the propriety of some of CONREP's operations. Grabau declared that he too was unaware of Crisan's disability despite the fact that he had previously traveled with her. Rodriguez's decision to require in-person attendance in Sacramento applied to all Department fiscal employees.

Crisan made her first disability accommodation request to the Department in January 2012 – one to two months after the decision to require her to work in Sacramento was made. Crisan had previously mentioned her back pain to her immediate supervisor, Heather Riis. Crisan, however, did not file a formal reasonable accommodation request prior to January 2012.

Crisan opposed summary adjudication and emphasized that she had never received poor performance reviews for her job. Crisan also asserted that she could perform the essential functions of her job from her home in Chico. While Crisan alleged that Riis was aware of her back injury, she did not allege that Rodriguez had looked at her personnel file or was aware of her disability. Crisan also asserted that she filed numerous protected complaints related to the administration of CONREP.

The trial court granted summary adjudication on the disability discrimination and whistleblower claims. In its statement of decision, the trial court noted that Crisan's evidence was essentially nonresponsive to the evidence introduced by the Department. The trial court found that (1) Rodriguez did not know of any disability suffered by Crisan at the time that Rodriguez made her decision to require all fiscal employees to work in person in Sacramento, and (2) the Department's requirement that Crisan work in person in Sacramento was supported by a legitimate business reason.

**B.**

*Analysis of Disability Discrimination and Whistleblower Retaliation Claims*

To establish a prima facie claim for disability discrimination under FEHA, a plaintiff must show that "she (1) suffered from a disability, or was regarded as suffering from a disability, (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action *because of the disability or perceived disability*." (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 235, italics added.) In other words, a " ' "plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision." ' " (*Id.* at p. 234, italics omitted, quoting *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 (*Harris*).)

Similarly, for a prima facie case of whistleblower retaliation, " 'the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision.' " (*Harris*, *supra*, 56 Cal.4th at p. 232, quoting *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228, 278 (conc. opn. of O'Connor, J.).) " 'The retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer was aware of the protected activities, and that the adverse action followed within a relatively short time thereafter." (*Jones v. Lyng* (D.D.C. 1986) 669 F.Supp. 1108, 1121.) "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " ' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 (*Morgan*), quoting *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614-615.)

For both claims, a prima facie showing by the plaintiff shifts the burden to the defendant to show a legitimate business reason for the adverse employment action. "If the employee establishes a prima facie case, the employer is required to offer a

10

legitimate, nondiscriminatory reason for the adverse employment action.  (*Horn* [*v. Cushman & Wakefield Western, Inc*. (1999)] 72 Cal.App.4th 798, 806.)  The employer's burden at this stage is to go forward with additional evidence; it does not take on a burden of persuasion.  (*Reeves v. Sanderson Plumbing Products, Inc*. (2000) 530 U.S. 133, 142; *Clark v. Claremont University Center* [(1992)] 6 Cal.App.4th [639,] 663.)  If the employer produces substantial evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of discrimination created by the prima facie case ' "simply drops out of the picture" ' (*Horn, supra*, 72 Cal.App.4th at p. 807, quoting *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 511) and the burden shifts back to the employee to prove intentional discrimination."  (*Morgan*, *supra*, 88 Cal.App.4th at p. 68.)

An employer does not have to prove the wisdom or practicality of the adverse employee decision.  " '[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct.  [Citations.]  While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.  Thus, "legitimate" reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*.' (*Guz* [*v. Bechtel Nat. Inc.* (2000)] 24 Cal.4th [317,] 358, original italics.)  . . .  [¶]  If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861, quoting *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038.)

11

## C.

### *Absence of Discriminatory or Retaliatory Motive*

The trial court properly granted summary adjudication of the disability discrimination and whistleblower claims. Both claims depend on Crisan demonstrating that the Department acted with discriminatory or retaliatory intent in deciding to require Crisan to work in person in Sacramento. However, the undisputed evidence showed that the decision was made on behalf of the Department solely by Rodriguez. Because Rodriguez was unaware of Crisan's disability or whistleblower claims, Rodriguez could not have based her decision on these unknown facts.

Rather than showing any intent to discriminate or retaliate against Crisan, the undisputed evidence showed that Rodriguez's decision was based on the reason that optimal transition of services to the newly created Department required all fiscal employees to be able to interact with each other and vendors in person. The application of the in-person attendance requirement to all fiscal employees for the new Department dispelled the possibility of discriminatory animus. Tellingly, Crisan does not claim that the in-person work requirement constituted discrimination or retaliation against *all* the Department's fiscal employees. The uniform rule of in-person work in Sacramento did not show any kind of intent to discriminate or retaliate against Crisan.

For similar reasons, we reject Crisan's "cat's paw" theory. The cat's paw theory refers to circumstances in which the decisionmaker who harbors discriminatory or retaliatory animus has the adverse employment action carried out by another person who does not have any bias against the employee.[3] (*Reeves v. Safeway Stores, Inc., supra,*

---

[3] The Sixth District has explained that the origin of the phrase "in this context, is apparently traced to Aesop: 'A cat and a monkey were sitting one day in the chimney corner watching some chestnuts which their master had laid down to roast in the ashes. The chestnuts had begun to burst with the heat, and the monkey said to the cat, "It is plain that your paws were made especially for pulling out those chestnuts. Do you reach forth

12

121 Cal.App.4th at p. 114.)  Because the employee still suffers the effects of discrimination or retaliation, the adverse employment action is subject to a viable legal claim.  (*Id.* at pp. 114-115.)  Here, Crisan speculates that Riis knew of her injury and schemed to discriminate against Crisan by influencing Rodriguez.  The flaw in Crisan's argument is that there is no evidence to show that Rodriguez – the sole decisionmaker – was influenced at all by Riis when Rodriguez made her decision.

Moreover, the evidence in the record does not show any discriminatory or retaliatory motive harbored by Riis.  However, Crisan bore the burden of showing that the adverse employment decision was at least influenced by someone with a discriminatory or retaliatory motive toward her.[4]  (*Arteaga v. Brink's,* Inc. (2008) 163

---

and draw them out.  Your paws are, indeed, exactly like our master's hands."  The cat was greatly flattered by this speech, and reached forward for the tempting chestnuts, but scarcely had he touched the hot ashes than he drew back with a cry, for he had burnt his paw; but he tried again, and managed to pull one chestnut out; then he pulled another, and a third, though each time he singed the hair on his paws.  When he could pull no more out he turned about and found that the monkey had taken the time to crack the chestnuts and eat them.'  (Fables from Aesop (1909) at <http://fairytales4u.com/fable/fable2.htm> (as of July 26, 2004).)  We note, however, that the term has a second meaning of relevance in this context:  a particular carpenter's tool used to extend the reach when pulling nails. (Ettlinger, Homeowners Menagerie (2004) at <http://www.thisoldhouse.com/toh/knowhow/tools/article/0.16417.213940.00.html> (as of July 28, 2004).)  Thus while the fable contemplates that the instrumentality has been duped or flattered into carrying out the will of the actuator, the concept here is broader: Imputation of retaliatory animus will be justified by any set of facts that would permit a jury to find that an intermediary, for whatever reasons, simply carried out the will of the actuator, rather than breaking the chain of causation by taking a truly independent action."  (*Reeves v. Safeway Stores, Inc*. (2004) 121 Cal.App.4th 95, 114, fn. 14.)

[4]     Because we conclude that the decision to require Crisan to work in person at the Department's headquarters in Sacramento was not made with any discriminatory or retaliatory motive, we do not consider whether that the decision constituted an adverse employment decision under FEHA.  (See *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 393 ["A transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm."].)

13

Cal.App.4th 327, 342 [" ' "[T]he plaintiff must prove the ultimate fact that the defendant engaged in intentional discrimination . . . ." ' "]; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247 [" 'An adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer.' "].)

The trial court also granted summary adjudication of the whistleblower retaliation cause of action on grounds that "there is no evidence that [the Department] took any adverse employment action which was motivated by [Crisan's] protected whistleblowing activities." On this point, the trial court found that "there is no information or evidence tying [Crisan's] required move to Sacramento headquarters to any allegedly protected reports . . . ." The trial court further found that "at the time she made the decision to move plaintiff to Sacramento, . . . Rodriguez was not aware of [any of Crisan's] complaints or reports about the Conditional Release Program ('CONREP') and although plaintiff disputes this assertion, she has offered no admissible evidence which demonstrates this statement is untrue. Without first offering admissible evidence to establish . . . Rodriguez's subjective awareness of plaintiff's whistleblowing activities, it is impossible for a reasonable factfinder to conclude that such activities could have been a motivating factor in the decision to require [Crisan] to begin working in Sacramento." In light of these factual findings, we conclude that the trial court properly granted summary adjudication on the whistleblower retaliation claim. Rodriguez could not have retaliated against Crisan based on information of which Rodriguez was unaware.[5]

---

[5]  Our conclusion that the trial court properly granted summary adjudication on grounds that there was no evidence of discriminatory animus by the decisionmaker obviates the need to consider the trial court's separate reason for granting summary adjudication. The trial court separately granted summary adjudication of the disability discrimination claim on grounds that the Department showed it had a legitimate business reason for requiring all fiscal employees – including Crisan – to work in person in Sacramento.

## III

### *Exclusion of Evidence of Failure to Accommodate After February 2, 2012*

Crisan's remaining contentions relate to errors occurring during the jury trial on her causes of action for failure to accommodate her disability. For this next issue, Crisan argues that the trial court erred in excluding evidence that the Department failed to accommodate her after February 2, 2012. We are not persuaded.

### A.

### *The Department's Motion in Limine*

Prior to the start of trial, the Department submitted motion in limine No. 8 to exclude evidence related to acts constituting failure to accommodate a disability or failure to engage in the interactive process after February 2, 2012. In support of the motion, the Department asserted that "as of February 2, 2012, [Crisan] was deemed by her doctor to be unable to work at all and, to date, [Crisan] has never been released to return to work. In fact, [Crisan] has obtained a disability retirement and Social Security Disability benefits based on her inability to return to work." In support, the Department introduced a note from Crisan's treating physician stating: "Request leave of absence for medical reasons from 2-2-12 through 5-8-12." The Department also introduced a letter written by Crisan in which she informed Riis, in pertinent part, that "I have enclosed the letters from my doctors advising that I cannot work for the period until July 9, 2012. . . . [¶] . . . As my doctors have not cleared me until at least July 9, 2012, this request to take time is reasonable given my back disability and stress that you acknowledged in your letter." (Italics added.) Another note from her physician stated that he would "[c]ontinue disability until end of September." Subsequent notes from her physician extended the medical leave several more times – each without any indication of ability to perform her work-related tasks. Crisan ultimately filed for disability retirement benefits, and was granted Social Security disability benefits.

15

At trial, Crisan's treating physician, James Carter, confirmed that she was never released to return to work:

"Q.  Isn't it true, Doctor, that after you sent that note to the Department of Mental Health February 2 of 2012, you never sent a note to that department afterwards releasing her to return to work in any capacity?  True?

"A.  [(by Dr. Carter)]  She was -- true."

Dr. Carter further testified that he "never told the department she could return to work, even at home . . . ."

## B.

### *Failure to Accommodate*

We review Crisan's argument about the exclusion of evidence regarding failure to accommodate after February 2, 2012, for abuse of discretion.  "Trial court rulings on the admissibility of evidence, whether in limine or during trial, are generally reviewed for abuse of discretion.  (*People v. Williams* (1997) 16 Cal.4th 153, 196-197 ['In determining the admissibility of evidence, the trial court has broad discretion. . . .  On appeal, a trial court's decision to admit or not admit evidence, whether made *in limine* or following a hearing pursuant to Evidence Code section 402, is reviewed only for abuse of discretion.']; accord, *People v. Alvarez* (1996) 14 Cal.4th 155, 203 ['appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion']; *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1476.)" (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.)  Under the abuse of discretion standard of review, "[t]he decision to exclude evidence 'will not be disturbed except on a showing [that] the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation].' " (*People v. Peoples* (2016) 62 Cal.4th 718, 745, quoting *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

16

Here, the trial court excluded evidence pertaining to Crisan's claim of a failure to accommodate her disability after February 2, 2012. "The elements of a failure to accommodate claim are similar to the elements of a Government Code section 12940, subdivision (a) discrimination claim, but there are important differences. The plaintiff must, in both cases, establish that he or she suffers from a disability covered by FEHA and that he or she is a qualified individual. For purposes of a section 12940, subdivision (k) claim, the plaintiff proves he or she is a qualified individual *by establishing that he or she can perform the essential functions of the position to which reassignment is sought*, rather than the essential functions of the existing position." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256, italics added.)

Crisan bore the burden of establishing the relevance of the evidence by showing that the failure to accommodate pertained to a time when she could have performed the essential functions of her job with reasonable accommodations. An employer has no duty to attempt to accommodate an employee who is totally disabled. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 249, citing *Swonke v. Sprint, Inc.* (2004) 327 F.Supp.2d 1128, 1137.) *Swonke* involved a plaintiff who suffered a knee injury for which he submitted multiple doctor's notes "excusing him entirely from work." (*Swonke,* at p. 1137.) The federal district court rejected plaintiff's claim that he could have worked with a modified schedule, rest breaks, and had the ability to work from home. (*Ibid.*) The *Swonke* court reasoned that "[s]ince plaintiff himself consistently indicated to his employer that he was incapacitated from working, it is hardly [his employer's] responsibility for failing to offer accommodations." (*Ibid.*) This reasoning applies to the present case.

For the period starting on February 2, 2012, and continuing uninterrupted until Crisan secured a disability retirement, Crisan presented repeated doctor's notes excusing her entirely from work. As in *Swonke*, the employer cannot be faulted for failure to accommodate a disability for which there appeared to be no accommodation. Crisan

17

attempts to distinguish *Swonke* by asserting that she "never informed her employer that she was unable to work in any capacity," but instead "told her employer multiple times that she could work with an accommodation." Crisan's assertions on this point lack any citation to the record and are therefore forfeited. (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [holding that factual assertions made in support of an argument require record citations within the argument portion of the appellate brief].) Moreover, her assertions are belied by the repeated notes from her doctor that excused her from work entirely without any suggestion that she could perform the essential duties of her job with accommodation. Consequently, the trial court properly excluded the evidence pertaining to failure to accommodate during the time when Crisan's doctor repeatedly excused her entirely from work.

## IV

### *Admission of Deposition Testimony of Unavailable Witness*

Lastly, Crisan contends the trial court erred in admitting into evidence the deposition testimony of Riis as an unavailable witness at trial. Her current evidentiary arguments have not been preserved for appeal.

During trial, the Department presented the deposition testimony of Riis because she was unavailable at the time. Counsel for the Department proposed reading the deposition testimony while on the stand and noted he would wait until counsel for Crisan "to make sure that's okay." When Crisan's attorney replied, "Sure," the Department's attorney read the deposition testimony aloud. After the deposition testimony was read to the jury, Crisan and the Department agreed on the record: "It's stipulated by the parties that . . . Riis is unable to testify in this matter due to medical reasons."

After the jury returned its verdict, Crisan's attorney noted for the record that he had timely objected to Riis's deposition testimony on three grounds: First, Riis did not meet the standard for unavailability. Second, "when the deposition was prepared, it . . . didn't follow civil procedure processes." And, third, "there were several speaking

18

objections . . . to the individual phrases" on such grounds as hearsay and lack of objection. The trial court confirmed that the objections had been made in a timely manner and even that counsel for Crisan had objected on grounds of authenticity of the deposition transcript. However, the trial court confirmed that it believed it had ruled correctly in admitting Riis's testimony.

Crisan now argues that (1) the testimony was unrelated to her claims of failure to accommodate and failure to engage in the interactive process and (2) the testimony should have been excluded because Crisan did not have the opportunity to cross-examine Riis. On the record, there is no indication that her trial attorney objected at trial on *these* grounds. The reporter's transcript does not indicate that Crisan objected to the deposition testimony of Riis on grounds that it was irrelevant to the claim presented at trial or that it should have been excluded for lack of opportunity to cross-examine Riis.

Evidence Code section 353, subdivision (a), states in pertinent part that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:  [¶]  (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear *the specific ground* of the objection or motion . . . ." (Italics added.)  Thus, Evidence Code section 353 requires that " 'the party who desires to raise the point of erroneous admission on appeal must object at the trial, specifically stating the grounds of the objection, and directing the objection to the particular evidence that the party seeks to exclude. . . .' " (*Platzer v. Mammoth Mountain Ski Area* (2002) 104 Cal.App.4th 1253, 1260-1261, quoting 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation At Trial, § 371, pp. 459-460.)  Here, however, Crisan did not object at trial on the same grounds that she now advances on appeal to argue for the exclusion of Riis's deposition testimony. We decline to address her arguments related to relevancy and lack of opportunity to cross-examine because she did not preserve them for review with a timely objection in the trial court.

19

## DISPOSITION

The judgment is affirmed.  The Department shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      /s/
HOCH, J.


We concur:


      /s/
BLEASE, Acting P. J.


      /s/
DUARTE, J.