Filed 2/8/23 Sgarlato v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CAMELIA SGARLATO, | |
| Plaintiff and Appellant, | E077448 |
| v. | (Super.Ct.No. RIC1809268) |
| COUNTY OF RIVERSIDE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Irma Poole Asberry, Judge. Affirmed.

Camelia Sgarlato, in pro. per., for Plaintiff and Appellant.

Smith Law Offices, Douglas C. Smith, and Karen L. Capasso for Defendant and Respondent.

Plaintiff and appellant Camelia Sgarlato was terminated from employment as a registered nurse for respondent Riverside County after the county determined she couldn't perform the essential functions of her job when she sought to return under new restrictions after an absence. They also determined an accommodation wasn't possible.

Sgarlato sued the county for disability discrimination, failure to stop disability discrimination, failure to accommodate a disability, failure to engage in an interactive process in seeking an accommodation, and retaliation. The trial judge granted summary judgment in the county's favor on all causes of action, and Sgarlato appeals. We agree with the trial judge that Sgarlato failed to provide evidence to create a triable issue of fact concerning discrimination, failure to accommodate, failure to stop discrimination, failure to engage in an interactive process, or retaliation, and conclude all five causes of action fail as a result. We therefore affirm the grant of summary judgment.

# I

## FACTS

A. *Sgarlato's Employment with the County*

Camelia Sgarlato was first hired on January 3, 2008 as a per diem Registered Nurse III for Riverside University Health Systems (RUHS). After moving around, she worked in permanent Registered Nurse III positions in Riverside County facilities from July 15, 2010 until March 2018, when she was released from employment.

On October 4, 2012, Sgarlato injured her left foot and ankle while pushing a patient on a gurney. She didn't initially report the injury because of a bad experience she

had reporting a prior work injury. Instead, she went back to work as usual and assumed her ankle would improve. However, by December, she started feeling increased pain and stiffness after standing and walking while at work. Eventually she sought medical treatment and discovered she had suffered a severe tendon tear.

On January 22, 2013, and in subsequent follow-up reports, Sgarlato's physician reported the injury and recommended she be placed in a position that would allow her to remain sedentary. On April 12, 2013, her health care provider filled out a form entitled Documentation of Disability, in which he indicated Sgarlato could walk a maximum of 5 minutes per hour, stand a maximum of five minutes per hour, and lift a maximum of 10 pounds. He said the limitations would last more than six months. The form requested Sgarlato have "sedentary duties only." In weekly Work Status Reports over the next couple months, her health care provider indicated she should be placed in a sit down job, with no standing, walking, climbing, stooping, bending, kneeling, or squatting.

Sgarlato's employer accommodated these work restrictions. First, they put her temporarily in a position in a clinic where she could review medical charts while seated. On June 27, 2013, they placed her in a sedentary case review position in their Case Management unit. In September 2013, she was hired to a Registered Nurse III position in the same unit, where she continued to work until July 2015.

In April 2015, Louise O'Rourke took over as director of Case Management, where she was charged with improving operations. On July 23, Pasha Dourseau, an assistant manager, saw Sgarlato filling out personal court documents at her desk. Dourseau

3

advised Sgarlato she couldn't conduct personal affairs during her work time and asked if she was on a break. Dourseau and Sgarlato have different versions of what happened next. According to Dourseau, Sgarlato said she was leaving work early to file the documents in court. She said she asked Sgarlato whether she had received permission to do so, and Sgarlato erupted, got up from her desk and bumped her intentionally. According to Sgarlato, she told Dourseau politely that she was on her lunch break and then went to the restroom. When she returned, she said she unintentionally bumped into Dourseau, who was coming out of her cubicle. She says she apologized, but Dourseau accused her of bumping her on purpose.

Dourseau went to O'Rourke to report the incident, and Sgarlato interrupted. According to O'Rourke, Sgarlato stepped into the doorway of her office, denied touching Dourseau, and yelled, "You have it out for me! You keep harassing me! You are prejudiced!" O'Rourke said she asked Sgarlato to sit down and discuss the situation, but Sgarlato continued yelling. In the end, O'Rourke had to physically place herself between Sgarlato and Dourseau. She yelled "Stop now!" to get Sgarlato's attention and calm her down. Sgarlato eventually sat down and the three discussed the matter. According to O'Rourke, she gave Sgarlato permission to leave early.

Sgarlato's version of these events is quite different. She says she apologized to Dourseau for bumping into her, but says when they were in O'Rourke's office, Dourseau was the one yelling and accusing Sgarlato of harassment. When Dourseau remained agitated, Sgarlato complained that the situation was escalating to the point she was

4

feeling harassed by Dourseau. She says O'Rourke responded by yelling, "You are crippled! I am doing you a favor to [let you] work in this office. I feel sorry for you." She says she asked O'Rourke to stop screaming at her, and O'Rourke invited her into her office. Sgarlato says she sat down without confronting Dourseau. When she tried to explain what had happened, O'Rourke yelled at her to stop talking and threatened to send her home. She agrees the three then discussed the matter. According to Sgarlato, she then returned to her desk to finish her workday.

The following Monday, Sgarlato complained about the incident to human resources. She met with human resources analyst Carly Obenberger and told her O'Rourke and Dourseau had discriminated against her and harassed her and that Dourseau falsely accused her of bumping her intentionally. She also accused O'Rourke of screaming at her. Obenberger took notes during the meeting and gave Sgarlato the form explaining county policy and the complaint process. Sgarlato filed a complaint the same day, accusing O'Rourke and Dourseau of discriminating against her based on race, color, national origin, and disability and of retaliating against her based on the July 23 incident.

Sgarlato was temporarily reassigned from Case Management to Patient Accounts and then to Quality Management, which allowed her to report to a different supervisor while human resources conducted an investigation. After the investigation, human resources found the allegations to be unsubstantiated. Human resources contacted Sgarlato around June 20, 2016 to tell her they had found no discrimination or harassment

5

had occurred, and they directed her to return to her position in Case Management on June 23, 2016, 11 months after the incident. The same day, Sgarlato filed a workers' compensation claim for emotional distress based in part on her treatment by her managers in Case Management.

Sgarlato returned to work in Case Management as directed. However, when O'Rourke asked her to sign a form acknowledging she could work in the position she previously had without needing accommodations, she refused, saying she disagreed with how the form characterized her work restrictions. The acknowledgement form said human resources had received a notification on September 22, 2015 from Dr. Watkin that Sgarlato had a condition that required permanent work restrictions, specifically she should be precluded from prolonged weight bearing, stay off her feet for 20 percent of her work shift, and avoid repetitive climbing. The acknowledgment said leadership in Case Management had determined those restrictions would not prevent her from performing the essential functions of her position. According to Sgarlato, the medical report that was the basis for these restrictions was written by a workers' compensation doctor who hadn't seen her for more than a year. She complained the restrictions written into the acknowledgement were outdated and inconsistent with her prior restrictions.

O'Rourke said she told Sgarlato if she wouldn't sign the acknowledgment form, she would have to go to human resources because she wasn't sure she could allow her to work. According to Sgarlato, O'Rourke was more definitive; she told her she would lose her job if she refused to sign. She said O'Rourke raised her voice when she refused to

6

sign the form, and ordered her to leave the department immediately. Sgarlato went to human resources and told Obenberger she refused to report back to her original department since she was uncomfortable working with O'Rourke. Sgarlato reiterated she didn't agree with the contents of the form, and refused to sign it. Obenberger attempted to clarify the meaning of the acknowledgement.

Sgarlato wasn't convinced. She refused to leave Obenberger's office and refused to return to duty in Case Management. Instead, she asked for human resources to reassign her to another department in the hospital so she wouldn't have to work under O'Rourke's supervision. Obenberger told her a reassignment wasn't justified since her prior allegations were unsubstantiated and told her there were no open positions in Quality Management, where she had worked temporarily as an accommodation. When Sgarlato refused to report back to Case Management, Obenberger called a manager senior to O'Rourke, who directed her to do so. She again refused and told Obenberger she was going home.

On July 8, 2016, Sgarlato filed a second discrimination complaint against O'Rourke, alleging harassment and discrimination based on disability and also that O'Rourke had threatened she would lose her job. Obenberger conducted the investigation for human resources and concluded her allegations were unsubstantiated.

Around the same time, Sgarlato submitted a doctor's note taking her off all work due to a psychological condition resulting in emotional distress. She was granted family and medical leave which continued until her leave hours ran out on September 23, 2016.

In September, she submitted a certification from a psychologist recommending she be relieved of all work duties until December 30, 2016. The County's Disability Access Office continued the interactive process with Sgarlato. They held several meetings and granted Sgarlato medical leaves of absence while the process was ongoing.

In October 2016, Sgarlato submitted a request for accommodation seeking work in a less stressful environment away from O'Rourke. The county denied this accommodation request because it was not reasonable to remove an employee's supervisor. They also determined granting additional leave would not make it more likely she would be able to return to work.

On January 4, 2017, the Disability Access Office and human resources issued a denial of her request for additional leave as a reasonable accommodation. They described as factors supporting their decision (1) her refusal to provide any details of her prognosis to justify a medical leave of absence, (2) her refusal to work under O'Rourke's supervision even though she wasn't limited in performing her essential job functions, and (3) the fact that she had already been provided with substantial leave without showing improvement. After serving the letter, the Disability Access Office attempted to contact Sgarlato to determine if she had updated restrictions, but she didn't respond.

On March 20, 2017, the county notified Sgarlato they would be filing an application for disability retirement on her behalf if she didn't direct them otherwise by March 29, 2017. March 23, 2017, Sgarlato responded, explaining her situation, including the ongoing physical problems caused by her injury and her problems with O'Rourke,

8

and saying she wasn't interested in applying for disability retirement and wanted to return to work. She also provided additional medical information.

On April 10, 2017, Marina Martinez from human resources, told Sgarlato they had received her letter and requested certification of her medical condition. The next day, Sgarlato provided a medical note from her psychologist releasing her to return to full duty from the restrictions caused by her emotional distress. On April 14, 2017, she provided a medical note from her physician releasing her to return to work in 10 days with the restrictions that she perform sedentary work three days a week for eight to 12 hours a day while wearing supportive shoes with insoles.

On April 20, Martinez informed Sgarlato the county would continue the interactive process to determine if her department was able to accommodate her new restrictions. On May 10, 2017, Sgarlato submitted revised restrictions allowing her to work *four* days a week for eight to 12 hours a day while wearing supportive shoes with insoles.

Martinez asked Sgarlato's department to prepare a job analysis assessing the essential functions of her position. On May 3, 2017, the department completed the job analysis and provided it to Martinez. Martinez then consulted further with RUHS management and they determined Sgarlato's restrictions could not be accommodated because they no longer had part-time sedentary nursing positions, and no other nursing positions were available which could accommodate her restrictions. In conducting the review, they determined the sedentary position Sgarlato had previously occupied no

longer existed due to a nursing shortage, the result of which was that all nurses were expected to be able to work the floor of the hospital when needed.

On May 11, 2017, Martinez met with Sgarlato to discuss the job analysis. Sgarlato said she had worked in two units before going out on leave. She said the job duties listed in the job analysis were not the duties she was performing when she left those positions, and said she was unable to perform floor work due to her restriction to sedentary work. After the meeting Martinez contacted the new person supervising the Case Management unit, Carlos Moreno, to confirm the job analysis correctly set out the job requirements, and he confirmed its accuracy. He reported there were no part-time sedentary nursing positions and also said there were no part-time nursing positions of any sort. He said making any nursing position part-time or sedentary would have required changes to the essential functions of the position and would have been a hardship on the department. On June 1, Martinez contacted Sgarlato to report the job analysis they reviewed at their meeting was accurate. After attempting to find part-time sedentary positions in another department, Martinez called Sgarlato and explained they were unable to accommodate her.

On July 13, 2017, Martinez sent Sgarlato a Denial of Work Accommodation Request letter informing her she could not be effectively accommodated in her current position and there were no current, appropriate vacancies within her department to which she could be reassigned, but she could be considered for alternative vacant positions in other county departments. Sgarlato returned a completed job search accommodation form

10

on July 18, 2017, indicating she was willing to work only in positions within her job series (nursing), was not willing to take a lower level position within her job series, was not willing to take a position at a lower salary level, and was interested only in day shift positions.

Sgarlato was added to the accommodation referral list to search for possible alternate positions. As part of that process, she was given preferential consideration for an alternate nursing position in the RUHS clinics. She attended a skills verification meeting with the hiring manager, who determined she was not qualified for the position due to insufficient knowledge and the fact the position had mobile tasks not compatible with her restrictions. No other positions meeting Sgarlato's requirements were located. While she was on the accommodation referral list, Sgarlato received unemployment benefits and then found a nursing position with another employer in September 2017. She reported she works full-time in her new position and could not find a part-time position.

On March 16, 2018, after she rejected disability retirement, Sgarlato was sent a letter notifying her of her release from employment, effective March 6, 2018.

B. *Employment Litigation and Summary Judgment*

On May 21, 2018, Sgarlato filed an initial complaint against the county. On July 24, 2020, she filed a third amended complaint alleging disability discrimination in violation of the Fair Employment and Housing Act (FEHA), failure to prevent discrimination in violation of FEHA, failure to accommodate in violation of FEHA, failure to engage in an interactive process in violation of FEHA, and retaliation in

11

violation of FEHA and Labor Code sections 98.6 and 1102.5. The third amended complaint is the operative complaint.

On March 11, 2021, the county filed a motion for summary judgment seeking dismissal of all Sgarlato's causes of action. The county filed 39 exhibits in support of the motion, including declarations from Obenberger, Martinez, O'Rourke and Moreno. Sgarlato submitted only her own declaration, which didn't set forth factual information, but instead listed documentary evidence she was submitting. Most of those documents were medical records and performance evaluations, and others were communications she had with her employer, which the county also submitted.

On May 25, 2021, the trial judge, Riverside County Superior Court Judge Irma Poole Asberry, heard argument on the summary judgment motion. On June 11, 2021, the trial judge issued a ruling granting the motion on all Sgarlato's claims.

The judge concluded Sgarlato's claims for disability discrimination and failure to prevent discrimination failed because she had presented no evidence of discrimination. The judge pointed out Sgarlato herself had testified O'Rourke and Dourseau were the people who discriminated against her, but the evidence established neither woman was involved in the decision to terminate her. Even if Sgarlato had presented evidence of discrimination, the judge concluded the county had presented evidence they had a legitimate business reason for the decision—that Sgarlato was no longer qualified to do her job, and they could not reasonably accommodate her as there were no available positions. The judge pointed to the fact Sgarlato had provided no evidence the position

12

she sought was still available and that requirements of the job were described as light, not sedentary, with standing and walking described as frequent.

Regarding the retaliation claim, the judge concluded the county met its initial burden by demonstrating they had a legitimate business reason for terminating Sgarlato. She also concluded the county had established there was no causal link because the supervisors she had complained about weren't involved in the decision to terminate her. The judge held the same analysis applied to her claim under Labor Code sections 1102.5 and 98.6.

Regarding her claim for failure to accommodate, the judge noted Sgarlato admitted she was given the leave time she requested and was released from her emotional distress restrictions by April 2017, leaving only her physical restrictions. The judge concluded the evidence showed the county tried to accommodate Sgarlato by finding sedentary positions, but none of them met her requirements. The judge rejected Sgarlato's argument she should have been placed in a sedentary, part-time position in her prior unit, because the county submitted evidence her former position didn't exist by 2017 and Sgarlato admitted she didn't know whether the position existed at that time. Because Sgarlato refused lower graded or lower paid positions, there was no indication there was an accommodation that was available consistent with her preferences.

The judge also ruled against Sgarlato on the claim the county had failed to engage in an interactive process. The judge concluded the evidence showed the county had consistently communicated with Sgarlato about her accommodation requests. She

13

rejected Sgarlato's argument the interactive process failed when her employer forced her to sign the form acknowledging she could perform the job in Case Management without accommodations. The judge held the form was not a statement that she couldn't receive accommodations, but only that no further accommodations were required for her to work in the position she held at the time. The judge noted Sgarlato provided no evidence of any other deficiencies in how the human resources department had conducted the interactive process.

Sgarlato filed a notice of appeal on July 23, 2021. The judge entered judgment in favor of the county on September 22, 2021. Though Sgarlato filed a proposed settled statement in the superior court, she ultimately withdrew the request and elected to proceed with the clerk's transcript on appeal.

## II

## ANALYSIS

A. *Disability Discrimination*

Sgarlato argues the trial judge erred by holding she failed to present evidence sufficient to create a triable issue of fact that she suffered disability discrimination.

To establish a prima facie case of disability discrimination under the FEHA, Sgarlato was required to present evidence she (1) suffers from a disability, (2) is a qualified individual, and (3) was subjected to an adverse employment action because of the disability. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 254.) The parties agree Sgarlato suffered from a disability due to the on-the-job injury of her foot. They

14

also agree she was subjected to an adverse employment action due to the disability, specifically that she was terminated from employment because her injury stopped her from fulfilling the essential functions of her job as a nurse.

The question at summary judgment, and the question we now face, is whether Sgarlato submitted enough evidence to create a triable question of fact as to whether she was a qualified individual when the county terminated her. (See *Green v. State* (2007) 42 Cal.4th 254, 258 ["FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires"].) A qualified individual is a person who can perform the essential functions of their employment. (Gov. Code, § 12940, subd. (a)(1).) The essential functions of a job are the fundamental job duties of the position. (Gov. Code, § 12926, subd. (f).) FEHA permits an employer to discharge a disabled employee who, "because of a physical or mental disability, is unable to perform the employee's essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health and safety of others even with reasonable accommodations." (Gov. Code, § 12940, subd. (a)(1).)

So, "in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." (*Green v. State*, *supra*, 42 Cal.4th at p. 262.) "In disability discrimination actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff can show he or she

15

was able to do the job with or without reasonable accommodation." (*Id.* at p. 265.) If the plaintiff introduces no evidence she was qualified to perform the essential functions of the position from which she was terminated, the employer is entitled to summary judgment. (E.g., *Swonke v. Sprint Inc.* (2004) 327 F.Supp.2d 1128, 1134.)

Thus, the question is whether there was enough evidence Sgarlato could work as a Registered Nurse III at the time of her termination to warrant presenting the issue to a jury. Sgarlato conceded she couldn't perform the essential functions of the job as her employer described them when she sought to return to work in 2017. The evidence is uncontested that they told her the position would require more than sedentary work and would be full-time. However, the issue is complicated by the fact Sgarlato had held positions which allowed her to remain sedentary from June 2013 to July 2015.

Sgarlato relies on evidence of her past job performance to show she could work under her work restrictions. In July 2013, when her restriction required sedentary work only, the county accommodated her disability by finding her temporary positions and later a permanent position in Case Management which allowed her to work at a desk. In July 2015, after the confrontation with O'Rourke and her ensuing complaint, they moved her to a temporary sedentary position in Quality Management. When her complaint was found unsubstantiated in June 2016, she was supposed to return to Case Management, but at that time she requested and obtained a medical leave due to psychological distress caused in part by the prospect of returning to work for O'Rourke. The county doesn't contest she performed adequately from July 2013 to June 2016. Sgarlato points to this

16

evidence that she held and performed sedentary jobs in both those departments before her time away as creating a fact dispute over whether she was qualified to perform the essential functions of the job as a Registered Nurse III when the county terminated her.

However, the county claimed and presented evidence that by mid-2017, they no longer had positions like the ones Sgarlato had occupied. Sgarlato sought to return to work in April 2017, after clearing her emotional distress disability, *18 months after* she left her job in Case Management and *eight months after* she left the temporary position in Quality Management. She provided a medical note releasing her to return to work with the restrictions that she perform sedentary work three days a week for eight to 12 hours a day while wearing supportive shoes with insoles. She later amended the restrictions to allow her to work under the same conditions but for four days a week. The department evaluated her request under the new work restrictions, performed a job analysis, and determined they had no sedentary, part-time Registered Nurse III positions available at that time. The department reported to human resources that the sedentary position Sgarlato sought no longer existed due to a nursing shortage, the result of which was that all nurses were expected to be able to work the floor of the hospital. The department supervisor said making any nursing position part-time or sedentary would have required changes to the essential functions of the position and would have been a hardship on the department. Faced with this analysis, Sgarlato said she was unable to perform floor work due to her restriction to sedentary work.

17

Sgarlato presented no evidence that a sedentary, part-time position did in fact exist at the time, so she failed to create a question of material fact as to whether she was qualified to perform the essential functions of the Registered Nurse III position. Her reliance on *Jensen v. Wells Fargo Bank*, *supra*, 85 Cal.App.4th 245 does not help. *Jensen* says that for reassignment to be a reasonable accommodation a "vacant position" must be available to the disabled employee. (*Id.* at pp. 256, 264.) Though Sgarlato argues she could work in the "desk job" she previously held, the uncontested evidence shows there were no vacant "desk jobs" by the time she sought to return to work. As a result, we conclude the trial judge did not err in determining Sgarlato could not prevail at trial on her claim that her release from employment was discriminatory.

B.  *Failure to Prevent Discrimination*

Sgarlato's cause of action alleging the county didn't prevent discrimination fails for the same reason. To prevail on a claim under Government Code § 12940, subdivision (k) for failure to prevent harassment or discrimination, a plaintiff must show (1) she was subjected to harassment or discrimination, (2) the defendant failed to take all reasonable steps to prevent harassment or discrimination, and (3) the failure caused the plaintiff to suffer injury, damage, loss, or harm. (*Lelaind v. City & Cnty. of San Francisco* (2008) 576 F.Supp.2d 1079.) Here, since the evidence was insufficient to create a fact issue on the existence of discrimination, it was similarly insufficient to create a fact issue whether the county failed to prevent discrimination.

18

C. *Failure to Accommodate the Disability*

Sgarlato argues the evidence creates a fact question as to whether the county violated Government Code section 12940, subdivision (m) by failing to accommodate her disability and terminating her employment. To prevail, Sgarlato must prove (1) she had a disability under the FEHA, (2) she was qualified to perform the essential functions of the position, and (3) her employer failed to reasonably accommodate her disability. (*Scotch v. Art Institute California* (2009) 173 Cal.App.4th 986, 1009-1010.) Sgarlato bears the burden of proving she was able to do the job with reasonable accommodation. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 977.)

As we've already discussed, Sgarlato has failed to present evidence she was qualified to perform the essential functions of her job at the time of her termination. "An employer is liable under [Government Code] section 12940(m) for failing to accommodate an employee only if the work environment could have been modified or adjusted in a manner that would have enabled the employee to perform the essential functions of the job." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, *supra*, 166 Cal.App.4th at p. 975.) Sgarlato was unable to work in her Registered Nurse III position at the time she was released from employment. The only evidence concerning available positions shows there were no part-time, sedentary positions that would have accommodated her work restrictions, and the manager of the department said they weren't able to accommodate anyone by creating such a position due to shortages that required all nursing positions to be staffed by people who could work the floor. Sgarlato

19

told the county she couldn't do the job, and as a result she can't prevail on her claim that the county failed to accommodate her.

Sgarlato argues the county failed to accommodate her "starting about October 24, 2016, . . . [when they] failed to address [her] transfer request and her leave of absence beyond October 24, 2016." This decision by the county doesn't serve as a basis for her failure to accommodate claim. Sgarlato admits she was released from her emotional distress restrictions in April 2017, after which only her physical restrictions remained. The county released her from employment only when she could not be reasonably accommodated in a nursing position due to her physical injury, not due to her emotional distress restrictions.

D. *Denial of Interactive Process*

Sgarlato argues the county denied her an interactive process, in violation of Government Code section 12940, subdivision (n). As with the discrimination and failure to accommodate claims, "section 12940(n) imposes liability only if a reasonable accommodation was possible." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, *supra*, 166 Cal.App.4th at p. 981.) "[A]n employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." (*Scotch v. Art Institute of California*, *supra*, 173 Cal.App.4th at p. 1018.)

Sgarlato argues she wasn't given the benefit of an interactive process. However, the county presented evidence she was engaged in ongoing interactive processes for years. The only evidence Sgarlato offers to support her claim "there was no interactive

20

process" comes in the form of the Employee Interactive Process Notes prepared by human resources, but they in fact document the interactive process the county conducted in 2017. As we described above, reasonable accommodation was not available to Sgarlato at the time of her release from employment because she was unable to perform the essential functions of her position or any alternate position she would consider. There were no available nursing positions which met her restrictions, and she was unwilling to take a non-nursing position. (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389 [reassignment is required only where an "already funded, vacant position at the same level exists"].) When there is no available accommodation, there is no need to continue the interactive process. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, *supra*, 166 Cal.App.4th at p. 984.)

Sgarlato does not offer any evidence to support her claim she was denied an interactive process. We therefore conclude the trial judge didn't err by holding her cause of action for failure to engage in the interactive process fails.

E. *Retaliation*

Sgarlato argues the trial judge erred by granting summary judgment on her claim for retaliation because she showed she engaged in protected activity when she sought workers' compensation, it's uncontested she was terminated from employment, and she established a causal link between the complaint and her termination.

To establish retaliation under Labor Code section 1102.5, the employee must show "(1) she engaged in a protected activity, (2) her employer subjected her to an adverse

employment action, and (3) there is a causal link between the two." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713.) To establish a causal link, the employee must present evidence that the protected activity "was a 'contributing factor' to an adverse employment action. (§ 1102.6.)" (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712.)

Sgarlato argues she engaged in protected activity under Labor Code section 1102.5 when she complained "that her workers' compensation case was settled in 2014, by her former attorney without her consent, and the insurance did not inform her, so she could get treatment somewhere else." She points to federal district court cases accepting the mere filing of a workers' compensation claim as protected activity. Both the record concerning her compensation claims and her arguments about them are problematic. As the quotation from her brief shows, she appears to have filed a workers' compensation claim related to her foot injury in 2014 and had trouble with her attorney. But she also filed an "industrial claim for work related stress" on June 20, 2016, which ultimately led to her taking a medical leave of absence. We will assume, without deciding, that she is correct that these acts constitute protected activity and also set aside potential problems with the evidence that she made these complaints.

Sgarlato's claim for retaliation nevertheless fails because there is no evidence to support a jury's inference of a causal link between the alleged protected activity and her release from employment. To the extent Sgarlato's position is that filing the 2014 workers' compensation claim gave her employer a reason to retaliate, the timeline

22

doesn't work. She filed that claim in 2014, when she was employed by the county in a sedentary Registered Nurse III position they provided as an accommodation for her injury. They accommodated her further by hiring her to a permanent sedentary position, which she held until she requested to be transferred in July 2015. She's presented no evidence, not even temporal proximity, to allow an inference that her termination in 2017 was causally linked to the filing of that original workers' compensation claim.

Sgarlato also points to her report of emotional distress in June 2016, which she made after being directed to return to work in Case Management under the supervision of O'Rourke. She argues "there was close proximity in time between [her] complaints and the County's retaliatory conduct." She says she "was injured on June 20, 2016, when she was told to go back to Utilization Review-Case Management Department, under the same manager against whom she complained." She then points out that three days later she was "discharged from further medical care for her workers' compensation claim regarding her left foot injury and released to return to her regular work." Sgarlato points out the acknowledgement form the county asked her to sign around that time showed they had received notice of the workers' compensation case related to her foot injury. And indeed, the acknowledgment says they received guidance concerning her work limitations in September 2015 from a doctor involved in that workers' compensation case. But the purported connection between the claim she suffered a work injury and her subsequent termination is obscure. The termination occurred in 2017, after the county had tried to accommodate Sgarlato by giving her medical leave and after her psychologist had cleared

her to return to work. Even if temporal proximity were enough to raise a fact issue concerning whether the termination occurred because of the protected conduct, we don't believe the proximity of the end of one workers' compensation case and the onset of another medical condition requiring leave could support finding a nexus.

We therefore conclude the trial judge properly granted summary judgment on her retaliation claim.[1]

## III

## DISPOSITION

We affirm the judgment. Respondent shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____

J.

We concur:

RAMIREZ _____

P. J.

RAPHAEL _____

J.

---

[1] Sgarlato argues we should reverse the trial judge because she wasn't provided a hearing prior to her termination. However, she made no such due process claim in her complaint in the trial court, so the issue is not before us. (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 891.)